[No. B070406. Second Dist., Div. Three. May 25, 1993.]

DEE ROWE et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
CHURCH OF SCIENTOLOGY OF ORANGE COUNTY et al., Real
Parties in Interest.

## COUNSEL

Cummins & White, Barry Van Sickle, Richard J. Wynne and Toby L. Plevin for Petitioners.

No appearance for Respondent.

Rabinowitz, Boudin, Standard, Krinsky & Lieberman, Eric M. Lieberman, Hillary Richard, Bowes & Moxon, Karen D. Holly and Laurie J. Bartilson for Real Parties in Interest.

## OPINION

**CROSKEY, J.**—Petitioners Dee Rowe and S. Glover Rowe (collectively Rowe) seek a writ of mandate to overturn the trial court's refusal to permit the amendment of Rowe's complaint against the Church of Scientology of Orange County (Scientology)[1] to allege a claim for punitive damages. Such pre-pleading permission by the court is a requirement imposed by Code of Civil Procedure section 425.14.[2] Rowe attacks this legislation by asserting that it is unconstitutional on the grounds that it violates (1) California's constitutional guarantee of a jury trial and (2) the establishment clause of the First Amendment to the United States Constitution. We conclude that Rowe is incorrect on both points. However, because it appears that the trial court

---

[1]Church of Scientology International, Religious Technology Center and Sea Organization were also named as defendants in Rowe's complaint. For purposes of this opinion there is no reason to distinguish between them and they are all embraced within the term "Scientology."

[2]Unless otherwise noted, all further statutory references are to the Code of Civil Procedure. Section 425.14 provides:

"No claim for punitive or exemplary damages against a religious corporation or religious corporation sole shall be included in a complaint or other pleading unless the court enters an order allowing an amended pleading that includes a claim for punitive or exemplary damages to be filed. The court may allow the filing of an amended pleading claiming punitive or exemplary damages on a motion by the party seeking the amended pleading and upon a finding, on the basis of the supporting and opposing affidavits presented, that the plaintiff has established evidence which substantiates that plaintiff will meet the clear and convincing standard of proof under Section 3294 of the Civil Code. [¶] Nothing in this section is intended to affect the plaintiff's right to discover evidence on the issue of punitive or exemplary damages."

may not have applied the proper standard in evaluating Rowe's proposed amended pleading, we grant the writ.

### FACTUAL AND PROCEDURAL BACKGROUND

On October 3, 1991, Rowe filed a complaint against Scientology alleging claims for fraud, false imprisonment, assault, intentional infliction of emotional distress, invasion of privacy and deceptive trade practices. The allegations arose out of a relationship which began with a management and consulting contract between Rowe and a company known as Sterling Management Systems (Sterling) which Rowe claims was a Scientology "front group." This contract related to Rowe's Alabama dental practice. Subsequently, Rowe alleges, Sterling recruited Rowe to enroll and participate in counseling programs at Scientology's Orange County facility located in Tustin, California.

There is no need to recite in detail the factual allegations concerning Scientology's claimed misconduct. It is sufficient to note that Rowe's complaint charged six separate intentional torts each of which was alleged to have been committed with malice and oppression. Based on such allegations, Rowe sought recovery of punitive damages.

Scientology responded with a motion to strike Rowe's allegations and prayer for punitive damages on the ground that Rowe had not complied with the requirement of section 425.14 to first obtain leave of court before seeking such relief. On December 11, 1991, the trial court granted the motion.[3]

Thereafter, Rowe made a motion for leave to amend the complaint to allege a prayer for punitive damages. In support of the motion, Rowe filed three declarations and documentary material apparently copied from certain Scientology publications. In addition, Rowe argued that section 425.14 violated two constitutional guarantees: (1) the right to a jury trial under both the United States and California Constitutions and (2) the establishment clause of the First Amendment.

Scientology opposed this motion with excerpts from depositions of Rowe and certain documentary evidence together with legal argument regarding the admissibility of Rowe's evidence and a response to the constitutional

---

[3]Rowe sought a writ of mandate from this court with respect to such order, claiming that section 425.14 violated the establishment clause of the First Amendment of the United States Constitution. On February 26, 1992, we denied Rowe's petition without prejudice "to the filing of a motion to amend the complaint in the court below."

questions raised. Scientology concluded its opposition with arguments which bear upon the issue before us: ". . . the only evidence submitted by plaintiffs in support of their pending motion consists of the declarations of Dee Rowe and S. Glover Rowe. As demonstrated . . . those declarations do not satisfy [their] burden of establishing their claim for punitive damages by clear and convincing proof"; and later, "the evidence offered by [Rowe] not only is not 'clear and convincing,' it is largely inadmissible. Analysis of the remaining admissible evidence pursuant to § 425.14 reveals that plaintiffs have failed to meet the clear and convincing standard, or any lesser standard for that matter."[4]

On September 22, 1992, the motion came on for hearing. The trial court rejected Rowe's constitutional arguments with little or no discussion[5] and then heard extensive argument as to whether Rowe had satisfied the "clear and convincing" prepleading hurdle of section 425.14. After considering the competing declarations and evidence before it the court denied Rowe's motion. In describing the conclusion which it reached it appears that the court was of the opinion that section 425.14 required Rowe to demonstrate evidence sufficient to satisfy the clear and convincing standard and that, *after weighing the evidence before it*, the court concluded that Rowe had failed to meet that burden.[6] Rowe's motion was therefore denied.

[4]This argument in effect assumes that section 425.14 imposes a requirement that Rowe must satisfy the court of ultimate success on the punitive damage issue before a pleading will be permitted. Such construction of the statute finds an echo in the trial court's own ruling. (See fn. 6, *post*.) As we point out below, to construe the statute in this manner would result in an unconstitutional impairment of the right to a jury trial.

[5]Although the record is not entirely clear, it appears that these issues were considered and denied on their merits. The record reflects the following colloquy with the court:

"The Court: I suppose the first issue that is raised is that CCP 425.14 is unconstitutional.

"Ms. Plevin: Yes, Sir.

"The Court: I am not in a position to declare 425.14 unconstitutional. The Legislature deemed in its wisdom appropriate to legislate and that's what they did when they enacted 425.14.

"As far as that claim is concerned, that does not sway the court.

"Ms. Plevin: May I ask, are you ruling then as to the issue regarding the constitutionality of 425.14 both on the 7th amendment issue and the 1st Amendment issue?

"The Court: Yes, you can take that to the bank and do whatever you want with it, but I am not in a position to make a determination that 425.14 is unconstitutional. Either as violative of the 7th Amendment, the right to freedom of religion—what are the other constitutional claims that you base your arguments on? Portions of the constitution?

"Ms. Plevin: Jury trial and establishment cause.

"The Court: Under both of those clauses, I am not going to declare 425.14 unconstitutional. You are just basing it on federal constitution?

"Ms. Plevin: California as well.

"The Court: All right."

[6]The trial court announced its decision, and the reasoning on which it was based, in the following terms:

Rowe then brought the instant petition for writ of mandate. We issued an alternative writ and set the matter for hearing.

ISSUES PRESENTED

Rowe asserts that the trial court's order, which prevented the pleading of any punitive damage claim, resulted from the operation of section 425.14, which Rowe claims is unconstitutional. Therefore, Rowe argues, issuance of a writ of mandate compelling the trial court to vacate its order is warranted. Rowe asserts that section 425.14 is unconstitutional on two grounds: first, it requires the trial court to weigh evidence and decide the issue of entitlement to punitive damages, thus depriving Rowe of the constitutionally protected right to a jury trial; and second, it creates an impermissible benefit for religious organizations and thus violates the establishment clause of the First Amendment.

We discuss each of these claims in turn.

DISCUSSION

1. *Section 425.14 Does Not Impair the Right to a Jury Trial.*

■■■ Article I, section 16 of the California Constitution provides in pertinent part, "Trial by jury is an inviolate right and shall be secured to all, . . . ."[7] "In California, the constitutional right to a jury trial in civil cases is coextensive with the right as it existed under the common law of

---

"The Court: I've reviewed the somewhat conclusionary declarations of the Rowes and I must admit I have reviewed the depositions on other occasions as well as now with respect to prior hearings.

"And there is a marked contrast between that which is contained in the depositions with respect to these allegations as far as claims for punitive damages are concerned.

"There is quite a disparity between that which is in the declarations and that which is in the depositions, and leaves me with a view that—*I have to have before me in order to grant relief under section 425.14, I have to have, in my view, clear and convincing proof, unequivocal, the kind of proof that will leave no substantial doubt.*

"The kind of proof that is sufficiently strong to command the unhesitating assertion of every reasonable mind that indeed there was this despicable conduct that would call for the issue of punitive damages to be placed before the jury.

"*I have a hard time in just reviewing the affidavits alone, concluding that the information there rises to the level of convincing the court by clear and convincing evidence that there was fraud, oppression, malice, of the quantity that would warrant adding on the punitive damages claim. There is a doubt.*

"Therefore, I'm going to deny the motion for leave to allow the prayer for punitive damages based upon that view. . . ." (Italics added.)

[7]Rowe also relied in the trial court upon the Seventh Amendment to the United States Constitution. However, the Seventh Amendment only guarantees a federal right to a jury trial in civil cases and is not binding on the states. (*Jehl* v. *Southern Pacific Co.* (1967) 66 Cal.2d

England in 1850, when the California Constitution was adopted. [Citation.] ' "The right has always been regarded as sacred and has been jealously guarded by the courts. [Citation.]" ' [Citation.] It is the function of the jury to determine questions of fact. [Citations.]" (*Hung* v. *Wang* (1992) 8 Cal.App.4th 908, 927 [11 Cal.Rptr.2d 113].)

 There is no question or dispute in this case that the claims asserted by Rowe, including the claim for punitive damages, are of the type to which the jury trial right attaches.[8] The question which we must address is whether section 425.14 in any way impairs that right. If we construe the statute to require the trial judge to weigh the evidence on both sides and only permit the filing of a claim for punitive damages if the court finds that Rowe will prevail, then Rowe's jury right would be clearly violated.

### a. *Section 425.14 Is Ambiguous*

We look first to the plain language of the statute. Where statutory language is clear and unambiguous there is no need for construction. (*Rojo* v. *Kliger* (1990) 52 Cal.3d 65, 73 [276 Cal.Rptr. 130, 801 P.2d 373].) The critical statutory language here involved reads, ". . . the court may allow the filing of an amended pleading claiming punitive or exemplary damages on a motion by the party seeking the amended pleading and upon a finding, on the basis of the supporting and opposing affidavits presented, that the plaintiff *has established evidence which substantiates that plaintiff will meet the clear and convincing standard of proof* under section 3294 of the Civil Code." (Italics added.)

Is this language clear and free from ambiguity? We begin our analysis of that question by examining the nature of the burden which this imposes on a pleading party. On the surface, it appears to be a different burden, if not a greater one, than that which is imposed by section 425.13, which contains a related pleading hurdle with respect to punitive damage claims against healthcare providers. That section provides in pertinent part, ". . . The court

---

821, 827 [59 Cal.Rptr. 276, 427 P.2d 988].) Therefore, we confine our discussion to the impact of the provisions of the California Constitution.

[8]The resolution by jury of punitive damage claims was firmly a part of the common law by the time of the adoption of the California Constitution. As the United States Supreme Court recently put it, " 'It is a well-established principle of the common law, that in actions of trespass and all actions on the case for torts, a jury may inflict what are called exemplary, punitive or vindictive damages upon a defendant, having in view the enormity of his offense rather than the measure of compensation to the plaintiff. . . . [¶] This has always been left to the discretion of the jury, as the degree of punishment to be thus inflicted must depend on the peculiar circumstances of each case.' [Citation.]" (*Pacific Mutual Life Insurance Co.* v. *Haslip* (1991) 499 U.S. 1, 16 [113 L.Ed.2d 1, 18, 111 S.Ct. 1032], quoting from *Day* v. *Woodworth* (1852) 54 U.S. (13 How.) 363, 371 [14 L.Ed. 181].)

may allow the filing of an amended pleading claiming punitive damages on a motion by the party seeking the amended pleading and on the basis of the supporting and opposing affidavits presented that the plaintiff has established that there is *a substantial probability that the plaintiff will prevail on the claim* pursuant to Section 3294 of the Civil Code." (Italics added.)[9] No citable decision has yet analyzed this pleading hurdle for clarity or meaning.[10]

However, similar language used in Civil Code section 1714.10 has recently been examined and found to be ambiguous. (*Hung* v. *Wang, supra,* 8 Cal.App.4th at p. 930.) More than one reasonable construction was possible for the language used in section 1714.10, which required a showing of "reasonable probability of success" before the pleading of a claim of civil conspiracy between an attorney and client would be allowed. The court, noting that it was bound to adopt the construction which would save the statute from constitutional infirmity, stated: ". . . [T]he legislative purpose of section 1714.10 was to eliminate frivolous allegations that attorneys have

---

[9]There are at least two other statutory provisions where the Legislature has created similar hurdles to the pleading or proof of particular claims. Each uses language similar to section 425.13:

(1) Civil Code section 1714.10, subdivision (a), where the term "reasonable probability" is utilized:

"No cause of action against an attorney for a civil conspiracy with his or her client arising from any attempt to contest or compromise a claim or dispute, and which is based upon the attorney's representation of the client, shall be included in a complaint or other pleading unless the court enters an order allowing the pleading that includes the claim for civil conspiracy to be filed after the court determines that the party seeking to file the pleading *has established that there is a reasonable probability that the party will prevail in the action. . . .*" (Italics added.)

The legislative history of Civil Code section 1714.10, subdivision (a), reveals that its similarity to section 425.13 is more than coincidental; it was patterned after that section. (*Hung* v. *Wang, supra,* 8 Cal.App.4th at p. 934, fn. 6.)

(2) Civil Code section 3295, subdivision (c), relating to restrictions on the pretrial discovery of a defendant's financial condition except upon a "substantial probability" showing:

"No pretrial discovery by the plaintiff shall be permitted with respect to [evidence of defendant's "profits" from the alleged wrongful conduct or the defendant's "financial condition"] unless the court enters an order permitting such discovery pursuant to this subdivision . . . . Upon motion by the plaintiff supported by appropriate affidavits and after a hearing, if the court deems a hearing to be necessary, the court may at any time enter an order permitting the discovery otherwise prohibited by this subdivision if the court finds, on the basis of the supporting and opposing affidavits presented, that the plaintiff *has established that there is a substantial probability that the plaintiff will prevail on the claim pursuant to Section 3294. . . .*" (Italics added.)

[10]In *College Hospital, Inc.* v. *Superior Court* (1993) 13 Cal.App.4th 1193 [16 Cal.Rptr.2d 833], the court construed section 425.13 by applying the reasoning of the *Hung* court (see below) notwithstanding the slight difference in language utilized in Civil Code section 1714.10, subdivision (a). However, on May 13, 1993, the California Supreme Court granted review (S027255).

conspired with their clients. This statutory purpose is served by a construction that requires a prefiling procedure to determine whether the proposed conspiracy pleading is legally sufficient, and whether it is supported by a sufficient prima facie showing of facts to sustain a favorable decision if the evidence submitted by the petitioner is credited. If either of these requirements is not met, the petition must be denied; if both are satisfied, it must be granted. This is a determination of law, not of fact. [Citation.] So construed, the statute provides a vehicle to preclude frivolous allegations of conspiracy without subjecting the allegations to a fact adjudicative screen that would violate the jury clause." (8 Cal.App.4th at p. 931.) Thus, the demonstration of a "reasonable probability" of success requires only the exhibition of a prima facie case.

While the "substantial probability" language of section 425.13 differs from Civil Code section 1714.10's use of the term "reasonable probability," it does not appear to so alter the pleader's burden as to compel a different analysis than that applied by the *Hung* court. Certainly, the language utilized in section 425.13 is ambiguous in the same way the phrase "reasonable probability" was found to be ambiguous in *Hung*.[11] This conclusion necessarily influences our examination of section 425.14.

The legislative history of section 425.14 demonstrates an intent on the part of the Legislature to impose a burden similar to that imposed by section 425.13. As originally proposed, this legislation was an amendment to Civil Code section 3294 which barred the recovery of any punitive damages against a charitable organization, including a religious corporation. (Sen. Bill No. 1 (1987-1988 Reg. Sess.).) It was amended in the Senate, on January 26, 1988, so as to incorporate charitable organizations into the recently enacted healthcare provider legislation (§ 425.13). The Senate passed this version. It was in the Assembly, on August 26, 1988, where the present wording was adopted, where the attempt to integrate with the healthcare provider statute was dropped and a new section (§ 425.14) was drafted. This new language also narrowed the coverage of the statute from charitable organizations generally and limited it to religious corporations.

---

[11]As the court in *Hung* stated, "The phrase, 'a reasonable probability' may be taken to mean that the petitioner must show that he or she has a case that will survive a motion for nonsuit and that, if successful, will be supported by sufficient evidence to warrant affirmance on appeal. This construction gives to the noun 'probability' its literal meaning as descriptive of the relative likelihood of an outcome. [Citation.] The adjective 'reasonable' requires the petitioner to do more than demonstrate *some* chance of winning; the petitioner must show that, given the evidence, he or she has a substantial case. [¶] If the Legislature had intended to require a petitioner to not only show a cognizable case but also that it is a winning case, it would have been a simple matter to use language that would have conveyed that meaning unambiguously, or at least with greater clarity. [Citations.]" (8 Cal.App.4th at p. 929, italics in the original.)

The legislation, as so modified, was approved by the Senate and was signed by the Governor on September 26, 1988.

Rowe argues that the language, as finally approved, is free from ambiguity and can *only* be read to require that the trial judge make a factual finding that sufficient evidence has been presented *to satisfy* the clear and convincing burden of proof required of plaintiffs seeking punitive damages. In other words, Rowe contends, the statute requires that the trial judge must first determine, from a review and weighing of supporting and opposing affidavits, that the plaintiff will win on the issue of punitive damages before a claim for such damages may be pled. Such construction would most certainly invade Rowe's constitutional jury right. (*Hung* v. *Wang, supra,* 8 Cal.App.4th at p. 927.) Nonetheless, given the language used by the Legislature, this is certainly one reasonable way to construe the statute.

However, as was the case with the statutory language examined in *Hung,* it is not the only reasonable construction. The burden imposed is to produce sufficient evidence to "*substantiate*" that the plaintiff "*will meet*" the high standard of proof required for punitive damages. This language can also be read to require only that the plaintiff demonstrate to the court's satisfaction that sufficient evidence exists to go to the jury on the issue of punitive damages. That is, plaintiff has sufficient evidence, if credited, to meet the clear and convincing standard and the judge is unable to say that a reasonable jury could not find for the plaintiff under that standard of proof. We therefore must conclude that this statute is ambiguous.

### b. *Construction of Section 425.14*

"Judicial doctrine governing construction of a law to avoid unconstitutionality is well settled. ■ If 'the terms of a statute are by fair and reasonable interpretation capable of a meaning consistent with the requirements of the Constitution, the statute will be given that meaning, rather than another in conflict with the Constitution.' [Citations.] Consequently, '[i]f feasible within bounds set by their words and purposes, statutes should be construed to preserve their constitutionality.' [Citation.]" (*Metromedia, Inc.* v. *City of San Diego* (1982) 32 Cal.3d 180, 186 [185 Cal.Rptr. 260, 649 P.2d 902].) "This follows from the presumption that the legislative body intended to enact a valid statute, . . . [Citations.] The United States Supreme Court has explained that the rule in favor of a construction which upholds a statute's validity 'plainly must mean that where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter.' [Citations.]" (*People* v. *Davenport* (1985) 41 Cal.3d 247,

264 [221 Cal.Rptr. 794, 710 P.2d 861]; see *Izazaga* v. *Superior Court* (1991) 54 Cal.3d 356, 371-372 [285 Cal.Rptr. 231, 815 P.2d 304].)

Applying these general rules, we are required to resolve any ambiguity in section 425.14 in a manner which is consistent, not inconsistent, with Rowe's constitutional right to a jury trial. (*Hung* v. *Wang, supra,* 8 Cal.App.4th at p. 931.) ■ We therefore must read the statute to require only that a plaintiff demonstrate the existence of sufficient evidence to establish a prima facie case for punitive damages, having in mind the higher clear and convincing standard of proof. In the words of the *Hung* court, it is only necessary that plaintiff provide "a sufficient prima facie showing of facts to sustain a favorable decision if the evidence submitted is credited." (8 Cal.App.4th at p. 931.) The trial court is not required to make any factual determination or to become involved in any weighing process beyond that necessarily involved in deciding whether a prima facie case for punitive damages exists. Once the court concludes that such a case can be presented at trial it must permit the proposed amended pleading to be filed. If it concludes that no such case exists, then it properly rejects the proposed pleading amendment. In making this judgment, the trial court's consideration of the defendant's opposing affidavits does not permit a weighing of them against the plaintiff's supporting evidence, but only a determination that they do not, *as a matter of law*, defeat that evidence.

This construction not only avoids obvious unconstitutionality, but is consistent with the intent of the Legislature. ■ The legislative history[12] clearly demonstrates that the statute's purpose is to protect religious organizations from the expense of defending against punitive damage claims for which a plaintiff can show no likelihood of success.[13]

■ The imposition of such a prepleading burden does not impair Rowe's right to a jury trial. The decision which the trial judge is required to

---

[12]In compliance with Evidence Code sections 455 and 459 we advised counsel prior to oral argument that we intended to take judicial notice of the legislative history of section 425.14. Counsel were given an opportunity to provide relevant information regarding such history both at oral argument and by postargument letter briefs which have been received and considered.

[13]In the records of both the Senate, where the bill originated, and in the Assembly, where the final amendments were made, the same statement of purpose is repeatedly reflected, "[T]he primary purpose of this bill is to protect religious organizations from what some individuals consider to be unjustifiably large punitive damage awards. This bill eliminates the immediate threat of a large punitive damage award by erecting a 'pleading hurdle,' namely, *the requirement that some likelihood of success be demonstrated to the court as a condition of pleading punitive damages*. Of course, this bill does nothing to limit the actual award of punitive damages once a court has granted leave to amend the complaint. [¶] In this regard, the change enacted last year in SB 241 (Lockyer), in which the standard of proof for punitive damages was raised from preponderance of the evidence to clear and convincing evidence, will do more to control 'excessive' punitive damage awards." (Third reading analysis of

make under this statute is substantially the same as in the case of a summary judgment motion. The only distinction is that under section 425.14 the burden is on the plaintiff to sustain the proposed pleading while in other cases, where the plaintiff does not have such a statutory pleading hurdle, a defendant's summary judgment motion imposes the burden on the defendant to defeat plaintiff's claim. (§ 437c, subd. (n)(2); *Torres* v. *Reardon* (1992) 3 Cal.App.4th 831, 836 [5 Cal.Rptr.2d 52].) However, merely reversing that burden does not involve deprivation of a jury right.

The burden imposed on a plaintiff by this legislation is very similar to that imposed on a plaintiff who responds to a summary judgment under the Federal Rules of Civil Procedure; and that burden has been upheld against claims that it violated the federal right to a jury trial under the Seventh Amendment. (*Johnston* v. *IVAC Corp.* (Fed.Cir. 1989) 885 F.2d 1574, 1577; *Etalook* v. *Exxon Pipeline Co.* (9th Cir. 1987) 831 F.2d 1440, 1446-1447; see also *Hung* v. *Wang, supra,* 8 Cal.App.4th at p. 932.) This conclusion is not altered by the fact that the pretrial threshold is the heightened "clear and convincing" standard required for proof of entitlement to punitive damages.

■ When a motion for summary judgment is made in a case where the plaintiff's claim carries a clear and convincing burden of proof, the evidence and all inferences which can reasonably be drawn therefrom must meet that higher standard. (*Anderson* v. *Liberty Lobby, Inc.* (1986) 477 U.S. 242, 254-255 [91 L.Ed.2d 202, 215-216, 106 SCt. 2505]; *Reader's Digest Assn.* v. *Superior Court* (1984) 37 Cal.3d 244, 252 [237 Cal.Rptr. 359, 62 A.L.R.4th 301]; *Miller* v. *Nestande* (1987) 192 Cal.App.3d 191, 196 [237 Cal.Rptr. 359, 62 A.L.R.4th 301].) As the United States Supreme Court put it, ". . . in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden. . . . [¶] Our holding that the clear-and-convincing standard of proof should be taken into account in ruling on summary judgment motions does not denigrate the role of the jury. It by no means authorizes trial on affidavits. ■ Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." (*Anderson* v. *Liberty Lobby, Inc., supra,* 477 U.S. at pp. 254-255 [91 L.Ed.2d at pp. 215-216].) If the federal summary judgment procedure does not impinge on the right to a jury trial, then section 425.14, which imposes no greater burden on a state plaintiff, likewise does not.

Sen. Bill No. 1, italics added. Cf. Analysis of Sen. Bill No. 1 prepared for the Assem. Com. on Judiciary, Subcom. on the Admin. of Justice (1987-1988 Reg. Sess.).)

c. *Conclusion*

We thus conclude that there is no invasion of Rowe's right to a jury trial; and we therefore reject the contention that section 425.14 is unconstitutional as an infringement of that right. That does not, however, conclude our examination of this objection to the trial court's ruling. We also have to determine, on the record before us, whether the trial court properly found that Rowe had failed to demonstrate the existence of a prima facie case.

However, before we can reach that issue, we must address Rowe's second constitutional argument: that section 425.14 violates the establishment clause of the First Amendment of the United States Constitution. Rowe contends that the statute provides a unique benefit to religious organizations and imposes a unique burden upon their adverse parties, in the absence of a legitimate secular purpose for doing either.

2. *Section 425.14 Does Not Violate the Establishment Clause of the First Amendment.*

The religion clauses of the First Amendment forbid the making of laws "respecting an establishment of religion, or prohibiting the free exercise thereof." Commonly referred to as the establishment and free exercise clauses, they together permit and require that government maintain a "benevolent neutrality which will permit religious exercise to exist without sponsorship and without interference." (*Walz* v. *Tax Commission* (1970) 397 U.S. 664, 669 [25 L.Ed.2d 697, 701, 90 S.Ct. 1409].)

The "benevolent neutrality" required by the First Amendment involves a delicate balance between the avoidance of sponsorship on the one hand and interference on the other. The United States Supreme Court has noted that the two religion clauses exist in "tension" with one another (*Thomas* v. *Review Bd., Ind. Empl. Sec. Div.* (1981) 450 U.S. 707, 719 [67 L.Ed.2d 624, 634, 101 S.Ct. 1425]; see also *Wisconsin* v. *Yoder* (1972) 406 U.S. 205, 220-221 [32 L.Ed.2d 15, 27-28, 92 S.Ct. 1526]) and has "struggled to find a neutral course between [them], both of which are cast in absolute terms, and either of which, if expanded to a logical extreme, would tend to clash with the other." (*Walz* v. *Tax Commission, supra,* 397 U.S. at pp. 668-669 [25 L.Ed.2d at p. 701].)

The religion clauses are, of course, in harmony to the extent that a law which "establishes" one religious view inevitably tends to "prohibit the free exercise" of others. (See *Sands* v. *Morongo Unified School Dist.* (1991) 53

Cal.3d 863, 870 [281 Cal.Rptr. 24, 809 P.2d 809].) However, the two clauses come into conflict when secular laws, although neutral as to religion in their intent, nonetheless in some manner impair the free exercise of religion. If the impairment is severe, the free exercise clause may be violated. (*Hobbie* v. *Unemployment Appeals Comm'n of Fla.* (1987) 480 U.S. 136, 146 [94 L.Ed.2d 190, 200, 107 S.Ct. 1046]; *Wisconsin* v. *Yoder, supra,* 406 U.S. at p. 220 [32 L.Ed.2d at p. 27].) Yet, exemptions from the ordinary requirements of the law may, if they are overly generous to religion, be subject to attack as "establishing" the religions exempted. (*Texas Monthly, Inc.* v. *Bullock* (1989) 489 U.S. 1, 15 [103 L.Ed. 2d 1, 15, 109 S.Ct. 890]; *Estate of Thornton* v. *Caldor, Inc.* (1985) 472 U.S. 703, 710 [86 L.Ed.2d 557, 563, 105 S.Ct. 2914].)

The establishment clause, which is made applicable to the states through the Fourteenth Amendment (*Everson* v. *Board of Education* (1947) 330 U.S. 1, 15 [91 L.Ed. 711, 723, 67 S.Ct. 504]), was intended to protect against three main evils: (1) sponsorship, (2) financial support of religion by the civil government, and (3) active involvement of the sovereign in religious activity. (*Lemon* v. *Kurtzman* (1971) 403 U.S. 602, 612 [29 L.Ed.2d 745, 755, 91 S.Ct. 2105]; *Walz* v. *Tax Commission, supra,* 397 U.S. at p. 668 [29 L.Ed.2d at p. 701].) However, the establishment clause has not been broadly applied to prohibit the grant to a religious organization of every possible benefit. For example, such a grant *is* permissible, *if* it meets the three-prong test set out in *Lemon* v. *Kurtzman, supra,* 403 U.S. 602. Under *Lemon,* a valid benefit grant must (1) have a valid secular purpose, (2) not have a primary effect of advancing religion or any particular religious sect, and (3) not foster excessive government entanglement in religion. (403 U.S. at pp. 612-613 [29 L.Ed.2d at p. 755].)

Within such limitations, it has long been recognized that the government may, and sometimes must, make specific "accommodations" of religious needs of the people, and that it may do so without violating the establishment clause. (*Corporation of Presiding Bishop* v. *Amos* (1987) 483 U.S. 327, 334-335 [97 L.Ed.2d 273, 282, 107 S.Ct. 2862]; *Zorach* v. *Clauson* (1952) 343 U.S. 306, 314 [96 L.Ed. 954, 962, 72 S.Ct. 679]; see generally, McConnell, *Accommodation of Religion* (1986) 1985 S.Ct. Rev. 1-59.) The validity of any particular benefit to religion depends upon whether the benefit constitutes such an "accommodation" of religion or instead is an impermissible "advancement." Rowe, of course, argues that section 425.14 impermissibly advances religion. In particular, Rowe contends the statute suffers from the same constitutional defect as a statute found invalid by the United States Supreme Court in *Texas Monthly, Inc.* v. *Bullock, supra,* 489 U.S. 1.

In *Texas Monthly*, the court struck down a Texas statute which granted an exemption from its sales tax for religious publications distributed by religious faiths and consisting of religious teachings or sacred religious texts. Justice Brennan, writing for the three-member plurality, stated the basis for overturning the statute as follows: "[W]hen government directs a subsidy exclusively to religious organizations that is not required by the Free Exercise Clause and that either burdens nonbeneficiaries markedly or cannot reasonably be seen as removing a significant state-imposed deterrent to the free exercise of religion, as Texas has done . . . , it 'provides unjustifiable rewards of assistance to religious organizations' and cannot but 'conve[y] a message of endorsement' to slighted members of the community. [Citation.] This is particularly true where, as here, the subsidy is targeted at writings that *promulgate* the teachings of religious faiths." (*Texas Monthly, Inc.* v. *Bullock, supra*, 489 U.S. at p. 15 [103 L.Ed.2d at p. 13], italics in the original.)

Rowe argues that section 425.14 violates the establishment clause by providing a *unique benefit* to religious organizations, as did the statute overturned in *Texas Monthly*, and by imposing a unique burden upon others, again as did the statute in *Texas Monthly*. Rowe contends such circumstances prove the statute is intended to, and does, sponsor and financially support religion, thereby advancing it.

For the reasons which we discuss below, we disagree and conclude section 425.14 is a *reasonable accommodation* of religion, which passes all three of the *Lemon* criteria and which accordingly serves the interests embodied in the free exercise clause, without sacrificing those represented by the establishment clause. However, in reaching this conclusion we must emphasize that while there can be little doubt that the *Lemon* criteria are the proper standard to be applied (*Sands* v. *Morongo Unified School Dist., supra*, 53 Cal.3d at pp. 871-872), it is also clear that where the subject is legislation such as section 425.14, which seeks to advance free exercise values, a rigid application of *Lemon* is not appropriate. (*Duffy* v. *State Personnel Bd.* (1991) 232 Cal.App.3d 1, 11 [283 Cal.Rptr. 622].)

 As the court in *Duffy* put it, "Legislation exempting religious observers from generally applicable government obligations would seldom, if ever, pass the 'purpose' and 'effects' prongs of the *Lemon* test since by definition, such legislation has a religious purpose and effect in promoting the free exercise of religion. [Citation.] On the other hand, judicial deference to all legislation that purports to facilitate the free exercise of religion would completely vitiate the establishment clause since any statute pertaining to religion can be viewed as accommodating free exercise rights. . . ." (232

Cal.App.3d at p. 11.) The question which we address is whether section 425.14 falls within the limits imposed by the establishment clause on voluntary government efforts to facilitate the free exercise of religion when such exercise is burdened by government itself. With that as a preface, we turn to an application of the three *Lemon* criteria.[14]

### a. *Secular Legislative Purpose*

As already noted, Rowe argues section 425.14 has no legitimate secular purpose and thus is not simply a permissible "accommodation" of religion, but rather is a constitutionally prohibited "advancement." The primary basis for Rowe's argument is that only religious organizations are benefited. Rowe relies primarily upon *Texas Monthly, Inc.* v. *Bullock, supra,* 489 U.S. 1, as authority.

In *Texas Monthly,* the circumstance that the subsidy was directed exclusively to religious organizations and that it was not required by the free exercise clause formed a substantial part of the plurality's rationale for finding Texas's sales tax exemption for religious publications unconstitutional. (*Texas Monthly, Inc.* v. *Bullock, supra,* 489 U.S. at p. 15 [103 L.Ed.2d at p. 13].) Rowe contends section 425.14 parallels the Texas exemption in this respect.

---

[14]As will be apparent from the following discussion, there is considerable overlap and interdependence between the "secular purpose" and "primary effect" criteria set out in *Lemon.* Indeed, Justice O'Connor, concurring in *Wallace* v. *Jaffree* (1985) 472 U.S. 38 [86 L.Ed.2d 29, 105 S.Ct. 2479], appears to call for the merger of these two tests. At least that is the view of one California court. (*Duffy* v. *State Personnel Bd., supra,* 232 Cal.App.3d at pp. 11-12.) In *Duffy,* the court noted that even if recognition is given to the fact that a particular governmental act advances religion, it is nonetheless necessary "to separate those benefits to religion that constitutionally accommodate the free exercise of religion from those that provide unjustifiable awards of assistance to religious organizations. In so doing the inquiry is 'whether government's purpose is to endorse religion and whether the statute actually conveys a message of endorsement.' [Citation.] Under this approach, the 'purpose' inquiry does not stand as an independent test, capable of striking down government acts on its own. Rather, it is an additional, subordinate index of unconstitutionality. To ascertain whether the statute conveys a message of endorsement, the relevant issue is how it would be perceived by an objective observer, acquainted with the text, history, and implementation of the government act. [Citation.] [¶] The merger of the 'purpose' and 'effects' tests in this way reduces the likelihood of an erroneous conclusion about legislative motive, and eliminates the danger that a rigidly applied 'purpose' test alone might invalidate laws whose effects are purely secular or advance free exercise values. It also helps explain cases where the Supreme Court has upheld long-established state practices that began in religion, such as Sunday closing laws, [citation], and practices that acknowledge religion such as legislative prayers [citation], and state-owned crèches [citations.]." (*Ibid.*)

Section 425.14 does not, of course, direct an actual or constructive subsidy to religious organizations.[15] However, it does afford a procedural advantage which may result in a saving of legal costs, and which, in some ways, is a benefit analogous to a subsidy. Further, section 425.14 admittedly is directed exclusively to religious organizations.

However, those circumstances, without more, do not rebut the existence of a secular purpose. Of course, a valid secular purpose is more easily established where legislation grants a benefit to a broad class of institutions and organizations, which is so defined that "it can be fairly concluded that religious institutions could be thought to fall within [its] natural perimeter." (*Walz* v. *Tax Commission, supra,* 397 U.S. at p. 696 [25 L.Ed.2d at p. 717] (conc. opn. of Harlan, J.); see also *Texas Monthly, Inc.* v. *Bullock, supra,* 489 U.S. at p. 17 [103 L.Ed.2d at p. 14] (lead opn. of Brennan, J.).) Nonetheless, such a broad class is not essential to establish a proper purpose for a benefit to religious organizations, and it is not required that benefits to religion "come packaged with benefits to secular entities." (*Corporation of Presiding Bishop* v. *Amos, supra,* 483 U.S. at p. 338 [97 L.Ed.2d at p. 284]; see also *Walz* v. *Tax Commission, supra,* 397 U.S. at p. 674 [25 L.Ed.2d at p. 704].)[16] Thus, a violation of the establishment clause is not established by the mere circumstance that section 425.14 protects only religious organizations. (*Corporation of Presiding Bishop* v. *Amos, supra,* 483 U.S. at pp. 335-336 [97 L.Ed.2d at pp. 282-283].)

Nor does the requirement of a secular purpose amount to a requirement that the law's purpose be unrelated to religion. (*Corporation of Presiding Bishop* v. *Amos, supra,* 483 U.S. at p. 335 [97 L.Ed.2d at p. 282].) To the contrary, although "advancement" of religion by the government is prohibited (*Lemon* v. *Kurtzman, supra,* 403 U.S. at p. 612 [29 L.Ed.2d at p. 755]),

---

[15]We also note that section 425.14 differs in one other very significant respect from the statute invalidated in *Texas Monthly.* The statute in that case did not merely exempt religious *organizations* from a tax; it exempted religious *publications* from a tax, and did so only if such publications consisted wholly of "writings promulgating the teaching of the faith" or of "writings sacred to a religious faith." (489 U.S. at p. 5 [103 L.Ed.2d at p. 7].) The circumstance that the Texas statute gave preferential treatment to the publication of religious messages was the only circumstance that a majority of the court found violative of the First Amendment.

[16]Even the plurality in *Texas Monthly, supra,* which found the challenged statute unconstitutional in large part because "it lack[ed] sufficient breadth," stopped short of finding invalid all benefits that are (1) conferred exclusively upon religious groups, or upon individuals because of their religious beliefs, and (2) *not* required by the free exercise clause. The *Texas Monthly* plurality noted that previous decisions of the court had upheld such exclusive benefits to religion as long as they either (1) did not impose substantial burdens on nonbeneficiaries, or (2) were designed to alleviate significant governmental intrusions upon the free exercise of religion. (*Texas Monthly, Inc.* v. *Bullock, supra,* 489 U.S. at p. 18, fn. 8, 103 L.Ed.2d at p. 15.)

the Constitution does not require the government to show "a callous indifference to religious groups." (*Zorach* v. *Clauson, supra,* 343 U.S. at p. 314 [96 L.Ed.2d at p. 962]. See also *Corporation of Presiding Bishop* v. *Amos, supra,* 483 U.S. at p. 335 [97 L.Ed.2d at p. 282].)

To facilitate the "benevolent neutrality" toward religion the government may make "accommodations" to religion without violating the establishment clause. The Supreme Court has found that a number of such "accommodations" are not prohibited. (See, e.g., *Corporation of Presiding Bishop* v. *Amos, supra,* 483 U.S. at pp. 334-335 [97 L.Ed.2d at p. 282] [federal statute exempting employers who are religious organizations from equal employment requirements of the Civil Rights Act of 1964]; *Zorach* v. *Clauson, supra,* 343 U.S. at p. 315 [96 L.Ed.2d at p. 962] [city ordinance providing "released time" for public school students to attend religious instruction]; *Selective Draft Law Cases* (1918) 245 U.S. 366, 389-390 [62 L.Ed. 349, 357-358, 38 S.Ct. 1597] [exemption from combat service of persons whose religious tenets forbid it].) ▇▇▇ Beyond finding that various benefits to religion are *not prohibited* by the establishment clause, the Supreme Court has affirmatively held that "[u]nder the *Lemon* analysis, *it is a permissible legislative purpose to alleviate significant governmental interference with the ability of religious organizations to define and carry out their religious missions.*" (*Corporation of Presiding Bishop* v. *Amos, supra,* 483 U.S. at p. 335 [97 L.Ed.2d at p. 282], italics added.)[17]

In *Presiding Bishop,* the Supreme Court upheld section 702 of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e-1). This section created

---

[17]In so holding, the Supreme Court acknowledged that an express purpose of benefiting religious organizations is not, strictly speaking, "secular," even where the benefit can legitimately be characterized as an "accommodation." (*Corporation of Presiding Bishop* v. *Amos, supra,* at p. 335 [97 L.Ed.2d at p. 282].) *Lemon*'s requirement of a secular purpose "does not mean that the law's purpose must be unrelated to religion." (*Ibid.*) In effect, the court appears to have adopted the views expressed by Justice O'Connor in her concurrence in *Wallace* v. *Jaffree, supra,* 472 U.S. 38, 83 [86 L.Ed.2d at pp. 29, 60]. In her opinion, Justice O'Connor suggested that the "purpose" test under the establishment clause should be modified from the strict "secular" purpose test enunciated in *Lemon* to one which leaves room under the establishment clause for legislation which does not have a secular purpose in the ordinary sense of that term, but which serves the values embodied in the free exercise clause. Specifically, Justice O'Connor said: "The solution to the conflict between the Religion Clauses lies . . . in identifying workable limits to the government's license to promote the free exercise of religion. . . . On its face, the [free exercise] Clause is directed at government interference with free exercise. Given that concern, one can plausibly assert that government pursues Free Exercise Clause values when it lifts a government-imposed burden on the free exercise of religion. If a statute falls within this category, then the standard Establishment Clause test should be modified accordingly. It is disingenuous to look for a purely secular purpose when the manifest objective of a statute is to facilitate the free exercise of religion by lifting a government-imposed burden. *Instead, the Court should simply acknowledge that the religious purpose of such a statute is legitimated by the Free Exercise Clause.*" (472 U.S. at p. 83 [86 L.Ed.2d at p. 60], conc. opn. of O'Connor, J., italics added.)

a statutory exemption of religious organizations from provisions of title VII of that act which otherwise prohibit discrimination in employment on the basis of religion. (*Id.* at pp. 339-340 [97 L.Ed.2d at p. 285].) As originally enacted, section 702 of the Civil Rights Act exempted only the religious activities of such organizations from the general prohibition. However, in 1972, the statute was amended to exempt all activities of such organizations. (*Presiding Bishop, supra,* 483 U.S. at p. 332, fn. 9 [97 L.Ed.2d at p. 280].) The district court concluded the amendment's purpose was the legitimate secular purpose of minimizing governmental "interfer[ence] with the decision-making process in religions." (*Id.* at p. 332 [97 L.Ed.2d at p. 280], quoting from the opinion of the district court.)[18]

The Supreme Court agreed with the district court's conclusion: "We may assume for the sake of argument that the pre-1972 exemption was adequate in the sense that the Free Exercise Clause required no more. Nonetheless, it is a significant burden on a religious organization to require it, on pain of substantial liability, to predict which of its activities a secular court will consider religious. The line is hardly a bright one, and an organization might understandably be concerned that a judge would not understand its religious tenets and sense of mission. Fear of potential liability might affect the way an organization carried out what it understood to be its religious mission." (*Presiding Bishop, supra,* at p. 336 [97 L.Ed.2d at p. 283].)

The governmental interference with religion which was intended to be alleviated by section 702 of the Civil Rights Act—a clear governmental restriction on religious organizations' discretion in hiring—was particularly obvious and direct. ▆▆▆ By comparison, the interference to be alleviated by section 425.14 is perhaps less obvious, but it is no less real and no less burdensome on religion. Civil Code section 3294, by recognizing a cause of action for exemplary and punitive damages, effectively puts the power and authority of the state and its courts at the disposal of private parties to prosecute claims which may or may not be meritorious, and if such claims are proven meritorious, to enforce them. The requirement that the parties sued must either appear and defend against punitive damage claims or risk a potentially immense forfeiture thus constitutes a palpable and material *state-imposed* burden.[19]

▪ ▆▆▆▆ Under well-established principles of establishment clause analysis, the government can legitimately relieve religious institutions of this

---

[18]However, we note that the district court found the statute invalid under the establishment clause, as having the primary *effect* of advancing religion. (*Id.* at p. 333 [97 L.Ed.2d at p. 281].)

[19]This conclusion finds an analogy in the reasoning of the United States Supreme Court in *Shelley* v. *Kraemer* (1948) 334 U.S. 1 [92 L.Ed. 1161, 68 S.Ct. 836] and in the recently decided *Edmonson* v. *Leesville Concrete Co, Inc.* (1991) 500 U.S. __ [114 L.Ed.2d 660, 111 S.Ct. 2077]. In *Shelley,* it will be remembered, the Supreme Court held there is "state action"

burden, because it can rationally be seen as posing a significant deterrent to the free exercise of religion.[20] Just as the fear of litigation under title VII might improperly affect a religious organization's hiring practices, the fear of being called before a court to defend against unfounded claims for punitive damages might likewise improperly affect the way in which a religious organization carries out what it views as its religious mission. The free exercise of religion is thus served, and the prohibition against establishing religion is not violated, by legislation designed to mitigate the potentially chilling effects upon the practices of religious groups resulting from the threat of litigation over unfounded punitive damages claims. The statute endeavors to insulate religious organizations from the threat of being required to defend against insupportable punitive damages claims—a potentially significant state-imposed burden upon religious practices. This is a reasonable goal, and seeking to achieve it is a legitimate secular purpose. (*Corporation of Presiding Bishop* v. *Amos, supra,* 483 U.S. at p. 335 [97 L.Ed.2d at p. 282].)

### b. *"Primary Effect"*

Under the second *Lemon* test, the law in question must have a "principal or primary effect . . . that neither advances nor inhibits religion." (403 U.S. at p. 612 [29 L.Ed.2d at p. 755].) Here, the inquiry is whether, irrespective of the government's intent, the practice in question "advances" religion.

What constitutes an improper "advancement" of religion has been variously characterized.[21] Generally, the court has invalidated legislation which either (1) burdens others while benefiting religion (*Estate of Thornton* v.

within the meaning of the Fourteenth Amendment where the state courts are utilized by private litigants to enforce racially restrictive covenants regarding the use and occupancy of real property. (334 U.S. at p. 20 [92 L.Ed. 1184].) In *Edmonson,* the court held there is "state action" when a private litigant exercises peremptory challenges to strike jurors in a civil case on grounds of racial or group bias. (114 L.Ed.2d at pp. 673-679 [111 S.Ct. at pp. 2082-2087].)

[20]Although laws discriminating *among* religions are subject to strict scrutiny, laws which afford a uniform benefit to all religions are upheld if rationally related to the furtherance of a legitimate end (*Corporation of the Presiding Bishop, supra,* 483 U.S. at p. 339 [97 L.Ed.2d at p. 285]) and are found invalid only if "wholly motivated by an impermissible purpose." (*Bowen* v. *Kendrick* (1988) 487 U.S. 589, 602 [101 L.Ed.2d 520, 535, 108 S.Ct. 2562]; *Wallace* v. *Jaffree, supra,* 472 U.S. at p. 56 [86 L.Ed.2d at p. 43].)

[21]In *Corporation of Presiding Bishop, supra,* 483 U.S. 327, the majority stated that "[a] law is not unconstitutional simply because it *allows* churches to advance religion, which is their very purpose. For a law to have forbidden 'effects' under *Lemon* it must be fair to say that the *government itself* has advanced religion through its own activities and influence." (*Corporation of Presiding Bishop* v. *Amos, supra,* 483 U.S. at p. 337 [97 L.Ed.2d at p. 283], italics in the original.) Concurring separately, Justice O'Connor criticized the majority's analysis as "obscur[ing] far more than enlighten[ing]" and, instead, characterized an impermissible governmental "advancement" of religion as a benefit to a religious institution which provides

*Caldor, Inc., supra,* 472 U.S. at pp. 708-709 [86 L.Ed.2d at p. 562]; (2) compels participation in religious observances (*Lee* v. *Weisman* (1992) 505 U.S. __ [120 L.Ed.2d 467, 488, 112 S.Ct. 2649]; or (3) endorses particular religious ideas or endorses religious ideas generally (*Epperson* v. *Arkansas* (1968) 393 U.S. 97, 106-107 [21 L.Ed.2d 228, 235-236, 89 S.Ct. 266]). By contrast, the Supreme Court has found legislation to effect a reasonable "accommodation" to religion where the legislation imposed no substantial burdens upon nonbeneficiaries, while at the same time either allowing the adherents of particular religions to act according to their beliefs, or alleviating governmental intrusions that might significantly deter or chill conduct that is protected by the free exercise clause. (*Texas Monthly, Inc.* v. *Bullock, supra,* 489 U.S. at p. 18, fn. 8 [103 L.Ed.2d at p. 15].)

Without question, the threat of incurring legal expenses in the defense of unfounded claims for punitive damages constitutes a significant potential deterrent to the free exercise of religion. Section 425.14 was enacted with the express intent of removing, or at least mitigating, that threat, and it plainly does so. A plaintiff wishing to claim punitive damages against a religious organization must make a prima facie showing of merit before the claim can be pleaded or the organization required to answer.

However, the requirement of such a showing does not burden nonbeneficiaries markedly or compel participation in religious observances or endorse religious ideas or tenets. Unlike a tax exemption for religious organizations, which has the effect of making the tax burden greater for those not exempt (*Texas Monthly, Inc.* v. *Bullock, supra,* 489 U.S. at p. 14 [103 L.Ed.2d at p. 13]; *Bob Jones University* v. *United States* (1983) 461 U.S. 574, 591 [76 L.Ed.2d 157, 173, 103 S.Ct. 2017]), or a requirement that employers accommodate the schedules of religiously observant employees (*Estate of Thornton* v. *Caldor, Inc., supra,* 472 U.S. at pp. 708-709 [86 L.Ed.2d at p. 562]), section 425.14 imposes no burden upon defendants that are not religious organizations. Such defendants must respond to frivolous, as well as potentially meritorious, punitive damage claims, whether the same requirement applies to religious organizations or not.

Nor does the statute unreasonably burden plaintiffs who *do* have legitimate punitive damage claims against religious organizations. These plaintiffs need only make a showing of prima facie merit earlier in the course of litigation than plaintiffs with similar claims must do against other defendants. Thus, section 425.14 leaves ultimately undisturbed both the rights of

"unjustifiable awards of assistance to religious organizations" or "conveys a message of endorsement" either of a particular religion or of religion generally. (*Id.* at pp. 347-348 [97 L.Ed.2d at p. 290], conc. opn. of O'Connor, J.)

injured parties to enforce legitimate claims against religious organizations and the right of civil society to protect its citizens from oppression, fraud and malice, whether by religious sects or others.

### c. *Excessive Government Entanglement With Religion*

With respect to the third and final *Lemon* criterion, it is obvious that section 425.14 does not foster excessive entanglement between religion and the state. (*Lemon* v. *Kurtzman, supra,* 403 U.S. at p. 613 [29 L.Ed.2d at p. 755]). If anything, section 425.14 minimizes involvement between the government and religious institutions by allowing religious institutions to refrain from responding in any manner to a claim for punitive damages until after the claimant has made the required statutory showing of merit.

### d. *Conclusion*

Section 425.14 was intended to, and does, relieve religious organizations of the need to respond to claims for punitive damages unless and until a prima facie showing of merit has been made. It has both the intent and the primary effect of freeing mosques, synagogues, churches, and religious organizations of all kinds from "a significant governmental interference with [their] ability to define and carry out their religious missions." (*Corporation of the Presiding Bishop* v. *Amos, supra,* 483 U.S. at p. 335 [97 L.Ed.2d at p. 282].) It thus constitutes a permissible "accommodation" of religion that is not inconsistent with the establishment clause and in fact nourishes the "benevolent neutrality" by government toward religion which is the ultimate aim of the First Amendment's two religion clauses considered together.[22]

### 3. *The Court Subjected Rowe's Evidentiary Showing to an Improper Standard*

 As discussed in some detail above, we have construed section 425.14 to require Rowe to demonstrate the existence of sufficient evidence to establish a prima facie right to recover punitive damages. That is, it is enough to show sufficient evidence to permit that claim to go to a jury under

---

[22]We do not reach or consider the issue of whether section 425.14 might violate the guarantees of separation of church and state contained in the California Constitution. (Cal. Const., art. I, § 4.) While arguably Rowe raised the issue in the trial court (see fn. 5, *ante*), it was not briefed or argued on appeal and therefore has been waived. (*Mann* v. *Cracchiolo* (1985) 38 Cal.3d 18, 41; *Adoption of Matthew B.* (1991) 232 Cal.App.3d 1239, 1267, fn. 16 [210 Cal.Rptr. 762, 694 P.2d 1134].) Parenthetically, however, we note that as California's establishment clause is "virtually identical" to the one contained in the First Amendment (*Sands* v. *Morongo, supra,* 53 Cal.3d at p. 882), our analysis and conclusion would doubtless not be different were the issue before us. (See *Duffy* v. *State Personnel Bd., supra,* 232 Cal.App.3d at p. 9.)

the clear and convincing standard. ▮▮ Our review of the record strongly suggests that Rowe's showing was subjected to a much more stringent hurdle.

Both counsel for Scientology and the trial court appeared to have read section 425.14 as requiring Rowe to actually prove, by clear and convincing evidence, a right to recover punitive damages. Counsel argued that Rowe's evidence did "not satisfy [the] burden of establishing [the] claim for punitive damages by clear and convincing proof." (See fn. 4, *ante*.)

The trial court, in the announcement of its decision, indicated that it considered and apparently weighed all of the supporting and opposing evidence and found Rowe's evidence *unpersuasive*. Specifically, the court stated: ". . . I have to have before me in order to grant relief under section 425.14, I have to have, in my view, clear and convincing proof, unequivocal, the kind of proof that will leave no substantial doubt. [¶] The kind of proof that is sufficiently strong to command the unhesitating assertion of every reasonable mind that indeed there was this despicable conduct that would call for the issue of punitive damages to be placed before the jury. [¶] I have a hard time in just reviewing the affidavits alone, concluding that the information there rises to the level of convincing the court by clear and convincing evidence that there was fraud, oppression, malice, of the quantity that would warrant adding on the punitive damages claim. There is a doubt. [¶] Therefore, I'm going to deny the motion for leave to allow the prayer for punitive damages based upon that view. . . ."

We cannot review such comments without some concern as to whether the court had not in fact imposed upon Rowe a far heavier burden than either was intended by the Legislature or is permitted by the language of the statute if it is to pass constitutional muster. Indeed, from the words used by the court, it appears likely that a standard was imposed on Rowe which required an evidentiary showing which demonstrated a winning case. To the extent that we have any doubt in this regard, fairness and justice require us to return the matter to the trial court for reconsideration under the proper standard.

▮▮ It seems clear that, subject to the usual limitations on the amendment of pleadings prior to or during trial, a party seeking to comply with section 425.14 should be able to do so at any time when there is available sufficient evidence to make the required prima facie showing. Therefore, a party should be free to renew a properly denied motion upon a subsequent and timely discovery of additional evidence. That being the case, Rowe should be permitted the opportunity to supply such additional evidence as may be available to support the reconsidered application for leave to file an

amended pleading. Similarly, Scientology should be given an opportunity to supplement its opposition.

## DISPOSITION

The alternative writ is discharged. A peremptory writ shall issue directing the trial court to vacate its order of September 22, 1992, denying Rowe's motion to amend the complaint to allege claims for punitive damages and to conduct further proceedings consistent with this opinion.

Klein, P. J., and Hinz, J., concurred.