[No. A052482. First Dist., Div. Three. Mar. 18, 1992.]

CARRETHA WALKER, Plaintiff and Appellant, v.
BLUE CROSS OF CALIFORNIA, Defendant and Respondent.

**COUNSEL**

Bushnell, Caplan & Fielding and Roderick P. Bushnell for Plaintiff and Appellant.

McClintock & Quadros, Katherine M. Quadros and Denise Trani-Morris for Defendant and Respondent.

## OPINION

### MERRILL, J.—

#### PROCEDURAL BACKGROUND

Appellant Carretha Walker's amended complaint for wrongful termination against her former employer, respondent Blue Cross of California (hereinafter Blue Cross), alleged causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress,[1] and discrimination in violation of the California Fair Employment and Housing Act (hereinafter FEHA), Government Code section 12900[2] et seq. Blue Cross filed a motion for summary judgment. The motion and the opposition were supported by declarations. Following the hearings, the trial court granted summary judgment in favor of Blue Cross. Walker appeals.

#### FACTUAL BACKGROUND

Preliminarily, we consider some general principles pertinent to our review of the grant of summary judgment. A summary judgment motion shall be granted if all the papers submitted show that there is no triable issue of material fact and that the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) ▆ In order to prevail on a summary judgment motion, the defendant must conclusively negate a necessary element of the plaintiff's case or establish a complete defense. (*LaRosa* v. *Superior Court* (1981) 122 Cal.App.3d 741, 744-745 [176 Cal.Rptr. 224].) As a summary judgment motion raises only questions of law concerning the construction and effect of the supporting and opposing papers, on appeal we review directly the papers submitted in connection with the motion. (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064 [225 Cal.Rptr. 203].) We must determine whether the facts as shown by the parties give rise to a triable issue of material fact. (*Howell* v. *State Farm Fire & Casualty Co.* (1990) 218 Cal.App.3d 1446, 1448 [267 Cal.Rptr. 708].) In making this determination, the moving party's affidavits are strictly construed while those of the opposing party are liberally construed. (*Miller* v. *Bechtel Corp.* (1983) 33 Cal.3d 868, 874 [191 Cal.Rptr. 619, 663 P.2d 177].)

Reviewing the affidavits with these considerations in mind, we glean the following facts. Walker was hired by Blue Cross as an applications clerk on

---

[1] On appeal, Walker waives her right to challenge the summary judgment and ensuing dismissal of her intentional infliction of emotional distress cause of action.

[2] All further statutory references are to the Government Code unless otherwise indicated.

April 7, 1969, at the age of 18. After one year she became a claims service clerk, and then a year later she was promoted to another claims clerk position. In April 1971, she received a promotion to a COB claims processor position. She stayed in this position two years, receiving satisfactory and above standard evaluations. Thereafter in May 1974, Walker received an annual merit increase and was promoted to COB major medical processor. She stayed in this position for almost six years, receiving two salary increases. During this time Walker received five performance evaluations, all of which were either satisfactory or above standard.

In April 1980, Walker was chosen for a new position of major medical processor II because of her knowledge and skills in claims processing. In this position she received two satisfactory evaluations and two salary increases. In June 1982, Walker was promoted to the position of collections representative. She was next promoted to the position of associate business systems analyst, receiving another salary increase in January 1985. In September 1985, after Walker completed a computer course, she was again promoted to the position of business systems analyst, and received an 18 percent salary increase. Walker's performance evaluation in January 1986, under a new rating system, revealed a "3.0" overall rating where "1" is the lowest and "5" is the highest an employee can receive. Walker declares that it was extremely unusual for employees to receive a higher than "3.0" rating. In her September 1986 evaluation, Walker received a "2.95" overall rating. In August 1987, she was promoted to business systems analyst II.

On a weekend in 1983, Walker fell and fractured her ankle, leaving her unable to work for five months. Her doctor informed her of the need for further surgery in the future to correct bone spurs and deteriorative arthritis developing in her improperly healed ankle. He told Walker that following the surgery she would probably be fully recovered in six months but might need more than six months. Walker ultimately decided to have the surgery performed on August 10, 1987.

Prior to the surgery, Walker spoke to two individuals in the personnel department of Blue Cross who informed her that under the policy then in existence, Walker could request an extension of the leave up to twelve months, supported by a doctor's statement and "with company approval." When she left work on August 10, 1987, for the surgery, Walker's initial return-to-work date, with her six-month medical leave, was February 10, 1988. Due to an apparent additional amount of sick leave not originally calculated, Walker received a form from Blue Cross sometime before December 31, 1987, notifying her that her six-month leave ended on March 4, 1988.

On January 1, 1988, Blue Cross amended its medical leave policies, instituting a maximum of six-month medical leave for an employee within an eighteen-month period of time. On January 21, 1988, when Walker telephoned the Blue Cross personnel department, she was informed that the new policy would apply to her, that she would not be considered for an extension of her leave under any circumstances and that she must return to work by February 10, 1988, or she would be terminated.

Walker made several requests for an extension of her medical leave. On January 28, 1988, in a letter to the vice-president of personnel at Blue Cross, Walker requested an extension of her medical leave to April 9, 1988, based on her physician's statement. Thereafter, Walker personally, or through her attorney, had several conversations and exchanges of correspondence with personnel representatives with respect to the leave extension. In two conversations between Walker's attorney and Gail Watts, the human resources director for Blue Cross, Watts stated that it was not the intent of the new leave policy to apply to a long-term employee such as Walker. Later, Watts informed Walker's attorney in a telephone conversation that Blue Cross would blend the old and new medical leave policies.

Walker received a letter from Blue Cross's human resources department on February 8, 1988, indicating that her request for an extension of her medical leave would not be approved and that she must return to work by March 4, 1988, or be terminated. On March 1, 1988, Walker's doctor wrote a note allowing her to return to work on Friday, March 4, 1988, on a "provisional and restricted basis due to physical limitations." Walker reported to work on Friday, March 4, 1988, worked approximately four and a half hours and then left for her physical therapy session. At her previously scheduled doctor's appointment on Monday, March 7, 1988, Walker's doctor determined that due to increased swelling and discomfort, she should remain off work one additional month. Walker informed her superiors of the doctor's evaluation.

On March 10, 1988, Walker received a mailgram from Blue Cross informing her that she was on unauthorized leave of absence and must return to work on March 14, 1988. Walker did not return to work on that day. On March 28, 1988, she was notified by Blue Cross of her termination for breach of the new medical leave policy.

### DISCUSSION

*At-will Employment*

Walker contends that the court erred in granting summary judgment as to her first cause of action for breach of the implied contract not to terminate

her employment except for good cause. She argues that triable issues of material fact exist as to whether she was an at-will employee, whether there was good cause for her termination and whether the reasons given for her termination were pretextual.

(2) Labor Code section 2922 provides in pertinent part as follows: "An employment, having no specified term, may be terminated at the will of either party on notice to the other. . . ." Our courts have ruled that "[t]his presumption may, however, be overcome by evidence that despite the absence of a specified term, the parties agreed that the employer's power to terminate would be limited in some way, e.g., by a requirement that termination be based only on 'good cause.' [Citations.]" (*Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 677 [254 Cal.Rptr. 211, 765 P.2d 373].) Citing *Pugh* v. *See's Candies, Inc.* (1981) 116 Cal.App.3d 311, 327 [171 Cal.Rptr. 917] [*Pugh I*], the *Foley* court noted that the existence and content of an implied-in-fact agreement may be ascertained from the employer's personnel policies or practices, the length of the employee's service, the employer's actions or communications reflecting assurances of continued employment and the industry practices. (47 Cal.3d at p. 680.) *Foley* prescribed that a court must look to the "totality of the circumstances" in determining the nature of the implied contract. Our Supreme Court found that allegations of repeated oral assurances of job security, along with consistent promotions, salary increases and bonuses during six years and nine months of employment permitted the employee's reasonable expectation that he would not be terminated but for good cause. (*Id.*, at p. 681.)

 In the instant case, the documents submitted in connection with the summary judgment motion demonstrate that there is a triable issue of material fact as to whether there was an implied-in-fact agreement not to terminate but for good cause. Viewing the totality of the circumstances surrounding Walker's employment, including her 19½ years of service, her receipt of consistent promotions and salary increases, her receipt of merit increases and satisfactory evaluations, and the personnel policies in existence during her employment, the existence of the implied-in-fact agreement has been established as a triable issue of fact.

In contending that appellant is an "at-will" employee, Blue Cross points to language in the employee handbook which states that its relationship with its employees is "voluntary employment 'at will.'" However, where the employment relationship has not been reduced to an integrated written agreement, signed by the employee, language in the handbook that there is an at-will employment relationship does not establish the nature of the relationship as a matter of law. (*Wilkerson* v. *Wells Fargo Bank* (1989) 212

Cal.App.3d 1217, 1227 [261 Cal.Rptr. 185].) The handbook reference to an at-will relationship does not negate any element of Walker's first cause of action or establish a complete defense thereto. The documents submitted by the parties reflect that a triable material issue remains as to the existence of an implied-in-fact agreement not to terminate except for good cause.

*Termination for Good Cause*

Blue Cross submits that even if an implied-in-fact agreement can be established, good cause for termination was established as a matter of law as Walker's failure to return to work after a six-month medical leave of absence violated the personnel policies in effect as of January 1, 1988. We find, however, that under the documents presented with respect to the summary judgment motion, the existence of good cause is a triable issue of material fact.

"Good cause" or "just cause" for termination connotes " 'a fair and honest cause or reason,' " regulated by the good faith of the employer. (*Pugh I, supra*, 116 Cal.App.3d at p. 330, quoting *R. J. Cardinal Co.* v. *Ritchie* (1963) 218 Cal.App.2d 124, 145 [32 Cal.Rptr. 545].) The term is relative. Whether good cause exists is dependent upon the particular circumstances of each case. (*Pugh I, supra*, at p. 330.)

In deciding whether good cause exists, there must be a balance between the employer's interest in operating its business efficiently and profitably and the employee's interest in continued employment. (*Pugh* v. *See's Candies, Inc.* (1988) 203 Cal.App.3d 743, 769 [250 Cal.Rptr. 195] [*Pugh II*]; *Crosier* v. *United Parcel Service, Inc.* (1983) 150 Cal.App.3d 1132, 1139 [198 Cal.Rptr. 361] [disapproved on other grounds in *Foley* v. *Interactive Data Corp., supra*, 47 Cal.3d at pp. 688, 700, fn. 42].) Care must be exercised so as not to interfere with the employer's legitimate exercise of managerial discretion. (*Pugh I, supra*, 116 Cal.App.3d at p. 330, fn. 26.) While the scope of such discretion is substantial, it is not unrestricted. Good cause is not properly found where the asserted reasons for discharge are "trivial, capricious, unrelated to business needs or goals, or pretextual." (*Pugh II, supra*, 203 Cal.App.3d at pp. 769-770.) Where there is a contract to terminate only for good cause, the employer has no right to terminate for an arbitrary or unreasonable decision. (*Id.*, at p. 769.)

It is undisputed that the Blue Cross personnel policies in effect at the time Walker commenced her medical leave permitted extensions of medical leaves beyond six months with medical certification and company approval. It is also undisputed that on January 1, 1988, while Walker was

still on medical leave of absence, the personnel policies were amended so that medical leaves longer than six months would not be permitted within an eighteen-month period of time and that an extension of Walker's medical leave would not comply with the new policy. Walker's declaration in opposition to summary judgment established her physician's opinion that she remain off work until at least April 7, 1988, that this documentation was presented on more than one occasion to her superiors at Blue Cross, that extension of her leave was denied as being in violation of newly amended personnel policies and that she was terminated for her failure to return to work after expiration of her medical leave despite her physician's statement that she would be disabled for one additional month. Walker's declaration also sets forth that prior to going on medical leave, Blue Cross personnel employees represented to her that an extension would be considered with proper medical authorization.

The documents presented by the parties provide evidence that Blue Cross's termination of Walker was based singularly on the personnel policies amended while her previously approved medical leave was in effect. While Blue Cross's supporting documents show that even the new personnel policies "[do] not preclude policy exceptions, based on business need, and approved by the Vice President of Human Resources," there is no indication in the record at this time that Blue Cross exercised its discretion by applying the former personnel policies, or some combination of the two policies, in considering an extension to Walker's leave. There is evidence that Blue Cross simply retroactively applied the new policy to this employee of 19½ years, and terminated her employment when she was unable to return to work after expiration of her leave. A triable issue of material fact as to the existence of good cause for termination has been presented by these declarations.

*Pretextual Termination*

Walker next argues that Blue Cross's purported reasons for her termination were pretextual, thus presenting an additional triable issue with respect to breach of the implied-in-fact contract not to terminate except for good cause. Walker submits there is sufficient evidence to establish that the purported reliance upon the new medical leave policy as a ground for her termination was a pretext. She contends Blue Cross knew of an upcoming reduction in force in her department and the necessary application of a discretionary policy in laying her off if she was still a part of the work force. By terminating her prior to the reduction in force, Walker argues, Blue Cross avoided offering her the opportunity to exercise her seniority rights and either transfer or be considered for retention along with the other business

systems analysts. Additionally, she states she was terminated because of an angry confrontation between her attorney and Blue Cross personnel, and ill will that was generated thereby.

The question of pretext raises triable issues of material fact in this instance. There is no dispute in the record that two months following her termination the positions of nine business systems analysts in Walker's office were eliminated, that employees subject to layoff were offered the opportunity to transfer to the Woodland Hills office and that two employees actually transferred to other departments after elimination of their positions. Walker also presented the deposition testimony of a coworker which stated that several business systems analysts senior to this coworker were laid off while she retained her position. Blue Cross's own evidence supporting summary judgment demonstrates that a combination of seniority and performance evaluations are utilized to determine the positions which will be eliminated when there is a reduction in force. Further, while Blue Cross denies that Walker would have retained her job during a reduction in force, the inference from the deposition testimony of Walker's coworker is that she may have been able to hold on to her position.

The proximity in time between Walker's termination and the reduction in force, the use of a discretionary reduction-in-force policy, as well as the conflicting evidence as to whether Walker would have survived the reduction, sufficiently raises a triable issue as to pretext. Where a former employee's suspicions of improper motives are primarily based on conjecture and speculation, he or she has not met the requisite burden of proof of establishing a pretextual basis for dismissal. (See *Crosier* v. *United Parcel Service, Inc.*, *supra*, 150 Cal.App.3d at p. 1139.) In the instant case, the evidence submitted with respect to the summary judgment motion goes beyond mere conjecture and sufficiently meets this burden.

*Implied Covenant of Good Faith and Fair Dealing*

 Walker next contends that the court also erred in granting summary judgment upon her claim for breach of the implied covenant of good faith and fair dealing implied in every contract. (See *Foley* v. *Interactive Data Corp.*, *supra*, 47 Cal.3d at p. 689.) We agree.

 The covenant of good faith and fair dealing is implied in all contracts and an allegation of its breach is an allegation of an obligation arising out of the contract. (*Foley* v. *Interactive Data Corp.*, *supra*, 47 Cal.3d at p. 690.) The duty imposed by the covenant is one of good faith and fair dealing in the performance and enforcement of the contract. (*Id.*, at p. 683.) In order to

raise a triable material issue as to a cause of action for breach of the implied covenant, the employee must set forth facts showing that the employer acted in bad faith and without probable cause in the termination. (*Burton* v. *Security Pacific Nat. Bank* (1988) 197 Cal.App.3d 972, 979 [243 Cal.Rptr. 277].) There is no breach of the implied covenant of good faith and fair dealing where the employer determined honestly and in good faith that good cause for discharge existed. (*Wilkerson* v. *Wells Fargo Bank, supra*, 212 Cal.App.3d at p. 1231; *Burton* v. *Security Pacific Nat. Bank, supra*, 197 Cal.App.3d at p. 979.)

By presenting evidence that she had been granted a medical leave of absence under the former policy which permitted extensions with a doctor's certification and company approval and that Blue Cross failed to consider an extension of her medical leave, Walker has presented evidentiary support for her claim that Blue Cross's termination was extraneous to the contract and was intentionally done to frustrate her enjoyment of contract rights. Nothing short of termination of this 19½ year employee was considered by the company. Additionally, while Walker still had some three and one-half weeks of vacation time, prior to her ultimate termination, the company did not suggest to her that she could use this period to extend her time off until her doctor approved her return to work. Further, by raising a triable issue of fact as to whether the reasons given for her termination were pretextual, there is additional evidentiary support for Walker's breach of the implied covenant claim. Walker's evidence has sufficiently countered Blue Cross's claim of good faith, raising a triable issue as to breach of the implied covenant of good faith and fair dealing.

*Physical Handicap Discrimination*

As her fourth cause of action, Walker alleged that she lost her job as a result of Blue Cross's discrimination against her on the basis of her race, sex and physical handicap pursuant to section 12940, subdivision (a), part of the FEHA, section 12900 et seq. This section provides in part that it is an unlawful employment practice for an employer to discharge a person from employment because of his or her race, religious creed, color, national origin, ancestry, physical handicap, medical condition, marital status, or sex. " 'Physical handicap' includes . . . impairment of physical ability because of amputation or loss of function or coordination, or any other health impairment which requires special education or related services." (§ 12926, subd. (h).) On appeal, she challenges the trial court's grant of summary judgment as to this cause of action only insofar as it pertains to discrimination based on physical handicap.

The objectives of the FEHA and title VII of the Federal Civil Rights Act (42 U.S.C. § 2000e et seq.) are identical and California courts have relied

upon federal law to interpret analogous provisions of the state statute. (*Mixon* v. *Fair Employment & Housing Com.* (1987) 192 Cal.App.3d 1306, 1316 [237 Cal.Rptr. 884].) ▮▮ In *McDonnell Douglas Corp.* v. *Green* (1973) 411 U.S. 792 [36 L.Ed.2d 668, 93 S.Ct. 1817], the Supreme Court described the shifting burden of proof in establishing a discrimination claim: (1) the complainant must show a prima facie case of discrimination; (2) the employer may then offer a legitimate reason for his actions; after which (3) the complainant is afforded an opportunity to prove that the reason given is a pretext to mask an illegal motive. The court set out the elements which may establish a prima facie case of racially discriminatory hiring practices while noting that the precise elements of a prima facie case would differ according to varying theories of discrimination and the particular factual situation. (*McDonnell Douglas Corp.* v. *Green, supra,* 411 U.S. at p. 802, fn. 13 [36 L.Ed.2d at pp. 677-678].) It described the requisite elements which may establish a prima facie case of a discriminatory hiring claim as "(i) that [the complainant] belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." (*Id.,* at p. 802 [36 L.Ed.2d at p. 677].) In *Mixon,* the Court of Appeal adapted the *McDonnell* test for a prima facie case of discriminatory hiring to a claim of discriminatory discharge, outlining the following requisite elements: (1) that the complainant belong to a protected class; (2) that his or her job performance was satisfactory; (3) that he was discharged; and (4) that others not in the protected class were retained in similar jobs, and/or his or her job was filled by an individual of comparable qualifications not in the protected class. (*Mixon* v. *Fair Employment & Housing Com., supra,* 192 Cal.App.3d at p. 1318.)

▮▮ Even assuming Walker can establish a prima facie case of discriminatory discharge, by her own deposition testimony she negates the requisite element that the reason provided for her termination was a pretext to mask an illegal motive of terminating her due to physical handicap. In her deposition testimony, which was before the trial court on summary judgment proceedings, the following question was posed to Walker: "Do you feel you were terminated because of your physical limitation?" She answered: "No." She was next asked: "Do you feel that you were denied an extension because of your physical limitation?" Walker answered: "No." In view of such evidence, Walker cannot raise a triable issue of material fact as to her claim of a violation of section 12940, subdivision (a). The papers submitted in connection with the summary judgment motion establish that Walker was not terminated because of any physical limitation or handicap. Summary judgment was properly granted as to the fourth cause of action.

## DISPOSITION

The summary judgment in favor of Blue Cross is reversed with respect to Walker's first cause of action for breach of the implied-in-fact contract and the second cause of action for breach of the implied covenant of good faith and fair dealing. In all other respects, the judgment is affirmed. Blue Cross shall bear Walker's costs on appeal.

White, P. J., and Chin, J., concurred.

A petition for a rehearing was denied April 15, 1992, and respondent's petition for review by the Supreme Court was denied July 9, 1992.