[No. B127050. Second Dist., Div. Two. Aug. 17, 1999.]

EDWARD DiLORETO, Plaintiff and Appellant, v.
BOARD OF EDUCATION OF THE DOWNEY UNIFIED SCHOOL
DISTRICT et al., Defendants and Respondents.

**COUNSEL**

Individual Rights Foundation and Patrick J. Manshardt for Plaintiff and Appellant.

David R. Huggins for the National Legal Foundation as Amicus Curiae on behalf of Plaintiff and Appellant.

Gibeaut, Mahan & Briscoe, Gary Robert Gibeaut, Nancy Mahan-Lamb and John W. Allen for Defendants and Respondents.

**OPINION**

**NOTT, Acting P. J.**—Appellant Edward DiLoreto appeals from a judgment entered after the trial court granted summary judgment in favor of respondents Board of Education of the Downey Unified School District, Edward Sussman, Betty Ferraro, and Margo Hoffer. Amicus curiae, the National Legal Foundation, supports DiLoretto's appeal of the judgment. We affirm.

We are asked to determine whether a public school's rejection of a sign featuring the Ten Commandments which was submitted by a private party in

response to a fundraising solicitation for commercial advertisements to be posted on the school's baseball field, violates that individual's right to free speech under article I, section 2 of the California Constitution. In reaching our decision, we must decide whether establishment clause considerations embodied in article I, section 4 of the California Constitution outweigh the individual's free speech rights.

While appellant's intention of spreading words of morality and ethics is laudable, religious tenets set forth in the Ten Commandments are inextricably tied to his sign, and since the sign was meant to be posted in a public school, establishment clause concerns are implicated. The law in this area requires that an intermediate appellate court deal not so much with the wording of the establishment clause itself, but rather with what higher courts have said the clause means. A paid ad posted on a baseball field wall could not reasonably be considered to constitute the literal "establishment" of a religion in, for example, the manner of the Massachusetts Bay Colony. Nevertheless, the case law in this area holds that even less expansive government involvement than at issue here could violate the establishment clause on a theory of "government entanglement."

Even assuming that respondents would have defeated an establishment clause attack, it would cost them money. The purpose of the fundraising program, by contrast, was to raise money. Instead, general funds that were presumably unavailable for refurbishment of the baseball field in the first instance are now being depleted by litigation. Moreover, further suits by zealous proponents of other religious belief systems were at least possible, and could reasonably be considered likely. Appellant's action changed a money-raising effort into a potential money-draining calamity. Hence, respondents chose the only reasonable course available: termination of the baseball fundraising effort.

Appellant argues that the California Constitution prohibits respondents from terminating the program. He argues that once respondents "opened the forum," they were obligated by the Constitution to continue the program and, if necessary, to litigate with all comers, no matter what the cost in computers, music and drama programs, educational materials, athletic equipment, etc., which might be lost due to diversion of funds to finance litigation. Appellant contends that these open-ended costs and losses would have to be borne by respondents, and ultimately by the students of respondents' school district, simply because respondents tried to raise funds to refurbish the baseball field. The Constitution does not require such a nonsensical result.

The practicalities of this situation gave appellant an effective veto power over the baseball fundraising program. Unfortunately, he chose to exercise

that power. Still more unfortunately, he chose to impose litigation costs on respondents when they followed the only reasonable course left open to them. The California Constitution does not require, however, that the school coffers be further depleted with the continuing litigation appellant now desires.

## Contentions

Appellant contends that: (1) respondents violated his right to free speech under article I, section 2 of the California Constitution; (2) the posting of the Ten Commandments on a school baseball field does not violate the establishment clause of article I, section 4 of the California Constitution; and (3) the trial court erred in ruling that the individual respondents were entitled to a grant of governmental immunity under Government Code section 820.2.

Amicus curiae submits that the decision of the trial court should be reversed because the California Constitution does not prohibit display of the Ten Commandments on a school baseball field.

## Facts and Procedural Background

In the fall of 1995, Downey High School's Baseball Booster Club (Booster Club) conducted a fund-raiser whereby commercial advertising was offered to local businesses in the form of signs erected on a fence at the baseball field. The baseball field and fence are visible to drivers on a nearby freeway. Appellant was asked to make a $400 donation to the Booster Club in exchange for advertising space on the baseball field.

Appellant, the chief executive officer of a Downey-based engineering firm called Yale Engineering, submitted a sign design which contained a lengthy religious message incorporating the Ten Commandments. Downey High School baseball coach Dan Bryan submitted the proposed sign design to Principal Allan Layne, who rejected the design due to its religious content.

In January 1996, appellant submitted another sign, which was less wordy. While the DiLoreto Family Trust was listed at the bottom of the sign, appellant's business was nowhere apparent on the sign. The sign was captioned, "For Peace In Our Day Pause & Meditate On These Principles To Live By!" Underneath that heading, the Ten Commandments were listed as follows: "1. I am the Lord your God. You shall have no other gods beside me. [¶] 2. Take not the name of God in vain. [¶] 3. Keep holy the Sabbath Day. [¶] 4. Honor your father & your mother. [¶] 5. You shall not kill. [¶] 6. You shall not commit adultery. [¶] 7. You shall not steal. [¶] 8. You shall not

bear false witness. [¶] 9. Do not covet your neighbor's wife. [¶] 10. Do not covet your neighbor's goods." Below the Ten Commandments, the following words were printed: "To earn respect for ourselves & our community we must do noble acts for the love of God & concern of our country!"

Mr. Layne sought the opinion of the district superintendent, respondent Edward Sussman, who ratified Mr. Layne's decision that the sign could not be posted because of its religious content. On March 14, 1996, Sussman and appellant discussed Sussman's concern about a possible lawsuit if the sign were posted. Appellant sought a legal opinion from the Attorney General of the State of California regarding the posting of the proposed sign. On September 13, 1996, the Attorney General's Office issued an opinion (79 Ops.Cal.Atty.Gen. 196 (1996)) which concluded that the school district's denial of the posting of the sign does not comport with the United States and California Constitutions where the advertiser's business is prominently displayed and the religious material is merely incorporated into the advertisement.

On September 25, 1996, appellant met with respondents Sussman, school board president Ferraro, and board member Hoffer. Appellant alleges that at this meeting the three respondents agreed that the sign would be posted at the baseball field.

On October 3, 1996, respondents removed all signs from the baseball field fence, and discontinued the Booster Club fund-raiser.

On May 2, 1997, appellant filed a complaint against the Downey Unified School District Board of Education, Edward Sussman, Betty Ferraro, and Margo Hoffer for: (1) violation of right to free speech (U.S. Const., 1st Amend.); (2) violation of right to free exercise of religion (U.S. Const., 1st Amend.); (3) violation of right to free speech (Cal. Const., arts. I & II); (4) violation of free exercise of religion (Cal. Const., arts. I & IV); (5) violation of federally protected rights under 42 United States Code section 1983 (against individual respondents Sussman, Ferraro and Hoffer); (6) violation of Religious Freedom Restoration Act of 1993; (7) declaratory relief—free speech; (8) declaratory relief—free exercise of religion; and (9) specific performance.

Respondents removed the action to the United States District Court, and filed motions to dismiss and for sanctions, which were denied. The federal trial court ordered appellant to show cause why the matter should not be dismissed as to the federal claims for relief, on different grounds from those raised by respondents. On July 25, 1997, the federal trial court ordered: (1)

the first and second claims dismissed without leave to amend; (2) the fifth claim dismissed with leave to amend;[1] (3) the sixth claim dismissed without leave to amend; and (4) the seventh and eighth claims against the individual respondents insofar as they seek a declaration under the United States Constitution against the individual respondents, dismissed without leave to amend. The federal trial court remanded the remaining pendent state law claims (the third, fourth, seventh, eighth, and ninth causes of action) against the respondents to state court.

On August 11, 1997, respondents demurred to the complaint before the state trial court and moved to strike the punitive damages claim in the complaint. The trial court overruled the demurrer and granted the motion to strike the punitive damages claim on September 3, 1997. Respondents filed a motion for summary judgment on behalf of the individual respondents and for summary adjudication in favor of respondent Downey Unified School District, or alternatively in favor of the individual respondents on the third, fourth, seventh and eighth causes of action. Appellant filed a motion for summary judgment or alternatively a motion for summary adjudication on the third, seventh and ninth causes of action.

On June 1, 1998, the trial court granted respondents' motion for summary judgment as to the individual respondents on the basis that they are immune from liability under Government Code section 820.2. Respondents' motion for summary judgment was granted with respect to the Downey Unified School District as to the third, fourth, seventh and eighth causes of action on the basis that posting of appellant's sign would violate the establishment clause of the United States Constitution (U.S. Const., 1st Amend.) and of the California Constitution (art. I, § 4). The trial court denied appellant's motion for summary judgment as to the third and seventh causes of action as moot, and denied summary adjudication as to the ninth cause of action. Appellant's motion for reconsideration was denied by the trial court on August 28, 1998.

Respondents brought a motion for summary judgment on the remaining ninth cause of action, which the trial court granted on September 29, 1998. Judgment was entered on October 23, 1998.

This appeal followed.

## Discussion

### I. *Standard of review*

 Summary judgment is granted if all the submitted papers show that there is no triable issue as to any material fact and that the moving party is

---

[1] It is unclear from the record whether appellant ever amended the fifth claim, or if the matter still survives in federal court.

entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)[2] A defendant seeking summary judgment has met the burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action cannot be established or that an affirmative defense to that cause of action exists. (§ 437c, subd. (n); see *Rowe* v. *Superior Court* (1993) 15 Cal.App.4th 1711, 1724 [19 Cal.Rptr.2d 625].) Once the defendant's burden is met, the burden shifts to the plaintiff to show that a triable issue of fact exists as to that cause of action. (*Ibid.*) The plaintiff must set forth specific facts showing that a triable issue of material fact exists. (§ 437c, subd. (o)(2).)

 In reviewing the propriety of a summary judgment, the appellate court independently reviews the record that was before the trial court. (*Chevron U.S.A., Inc.* v. *Superior Court* (1992) 4 Cal.App.4th 544, 548 [5 Cal.Rptr.2d 674], review den.) We must determine whether the facts as shown by the parties give rise to a triable issue of material fact. (*Walker* v. *Blue Cross of California* (1992) 4 Cal.App.4th 985, 990 [6 Cal.Rptr.2d 184].) In making this determination, the moving party's affidavits are strictly construed while those of the opposing party are liberally construed. (*Ibid.*)

II. *Whether the posting of the Ten Commandments at a public school baseball field contravenes the establishment clause of article I, section 4 of the California Constitution*[3]

Article I, section 4 of the California Constitution reads as follows: "Sec. 4. Free exercise and enjoyment of religion without discrimination or preference are guaranteed. This liberty of conscience does not excuse acts that are licentious or inconsistent with the peace or safety of the State. The Legislature shall make no law respecting an establishment of religion." Federal cases may supply guidance in interpreting the establishment clause, although California courts must independently determine the scope of the clause. (*Sands* v. *Morongo Unified School Dist.* (1991) 53 Cal.3d 863, 883 [281 Cal.Rptr. 34, 809 P.2d 809].)

---

[2]All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[3]In anticipation of argument by respondents, appellant urges that even though Downey High School had removed all the signs and terminated the fund-raiser, the matter is not moot because appellant suffered harm to his free speech rights, respondents failed to completely close the forum, and the closure of the forum was not content neutral because it was closed for the sole purpose of denying appellant his right to express his viewpoint. Respondents do not address appellant's argument, but we agree with appellant that the matter is not moot, since appellant contends that his free speech rights were violated by the action taken when his sign was not posted. (See *Brandon* v. *Board of Ed. of Guilderland Cent. Sch.* (2d Cir. 1980) 635 F.2d 971, 973 [freedom of speech and religion action not moot even though students graduated from high school by the time the action was heard].)

In *Stone* v. *Graham* (1980) 449 U.S. 39 [101 S.Ct. 192, 66 L.Ed.2d 199], the United States Supreme Court held that a Kentucky statute requiring the posting of the Ten Commandments on the wall of each public elementary and secondary school had no secular legislative purpose, and was therefore unconstitutional. (*Id.* at p. 41 [101 S.Ct. at pp. 193-194].) ▮▮ The court reiterated the three-part test of *Lemon* v. *Kurtzman* (1971) 403 U.S. 602, 612-613 [91 S.Ct. 2105, 2111, 29 L.Ed.2d 745] (*Lemon*) used for determining whether a statute passes muster under the establishment clause: " 'First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion . . . ; finally the statute must not foster "an excessive government entanglement with religion." ' " (*Stone* v. *Graham, supra,* at p. 40 [101 S.Ct. at p. 193].) In concluding that the statute failed the first part of the *Lemon* test, the court stated: "The pre-eminent purpose for posting the Ten Commandments on schoolroom walls is plainly religious in nature. The Ten Commandments are undeniably a sacred text in the Jewish and Christian faiths, . . . the first part of the Commandments concerns the religious duties of believers: worshipping the Lord God alone, avoiding idolatry, not using the Lord's name in vain, and observing the Sabbath Day." (*Stone* v. *Graham, supra,* at pp. 41-42 [101 S.Ct. at p. 194], fn. omitted.) The court concluded that while the veneration of the Ten Commandments may be a laudable objective as a matter of private devotion, it is not a permissible state objective, even though the posted copies were financed by voluntary private contributions. (*Id.* at p. 42 [101 S.Ct. at p. 194].)

▮▮ Applying the three-part test of *Lemon*, we conclude that the posting of appellant's sign would have violated the establishment clause. While it is true that the original purpose of the fund-raiser was secular, if the Booster Club were to begin accepting signs of a religious nature which do not indicate a connection to a business, its secular purpose would be subverted. The posting of the Ten Commandments on the baseball field in sight not only of students, players, school supporters, and faculty, but also of passersby on the nearby freeway, would clearly advance a religious, rather than a secular interest. The first three Commandments, as noted in *Stone*, focus on the duties of the Jewish and Christian worshipper—these duties are certainly not endemic to other faiths. Nor are they tenets by which an atheist, however otherwise moral and ethical, may choose to live. Of course, the posting of the Ten Commandments on a baseball field of a school would have a great effect on impressionable young minds in a country where elementary and secondary students are compelled to attend school. Students attending physical education functions and games at the baseball field would have no choice but to view appellant's sign. We agree with respondents that the posting of the Ten Commandments on the school baseball field would give the impression that the state has placed its imprimatur on a particular religious creed.

Appellant cites to the Attorney General's opinion, which hypothesized that where a sign identified the advertising party and integrated the Ten Commandments into its advertisement, such a sign would not violate the establishment clause if posted on school grounds. The opinion, even if of persuasive value, has no application here. There is no mention of appellant's business anywhere on the sign. Rather, the Ten Commandments are prominently displayed, and students are exhorted to pause and meditate on the principles outlined and to do noble acts "for the love of God."

Appellant attacks from another front, by citing *Doe* v. *Madison School Dist. No. 321* (9th Cir. 1998) 147 F.3d 832, an opinion which has been vacated and the complaint ordered dismissed (9th Cir. 1999) 177 F.3d 789), for the proposition that a school district which permits *private* expression of religion is not impermissibly endorsing religion. That is, appellant urges, the sign would meet the first prong of the *Lemon* test because respondents would be using a neutral and secular selection process if they were to allow all advertisers to use the space regardless of content. We disagree. The selection process was not content neutral in the sense appellant proposes, because the policy of the school was to screen the advertisers. Since the school exercised its discretion, any rejection or acceptance of advertisers may have been viewed as an endorsement thereof. Indeed, the school had rejected sign proposals from liquor establishments and Planned Parenthood. Therefore, if respondents allowed appellant's sign to go up, that action would be viewed as a promulgation of certain religious views. Thus, appellant's argument that the posting of the sign is the action of a private individual, because he paid for it, and because only the views of the individual rather than the school are promoted, fails. As the *Stone* court held: "It does not matter that the posted copies of the Ten Commandments are financed by voluntary private contributions, for the mere posting of the copies under the auspices of the legislature provides the 'official support of the State . . . Government' that the Establishment Clause prohibits." (*Stone* v. *Graham*, *supra*, 449 U.S. at p. 42 [101 S.Ct. at p. 194].)

Finally, we find that posting of the sign involves excessive government entanglement. The school must review, edit, maintain and post the signs, and the Booster Club must collect the money. The school must deal with the possibility of protests, other religious factions seeking equal space, and the possibility of lawsuits. Moreover, the cases which appellant cites in support of his argument that greater government entanglement has been found to not impact the establishment clause do not assist him. Those cases involve the lending of school texts or faculty to religious institutions. They do not include the promotion of specific religions within school grounds.

Nor does amicus curiae's citation to *Okrand* v. *City of Los Angeles* (1989) 207 Cal.App.3d 566 [254 Cal.Rptr. 913] benefit appellant's cause. In that case, Division Five of this district found that the City of Los Angeles's display of an unlighted menorah during Chanukah did not violate the three prongs of the *Lemon* test where the nonsecular purpose of the display was to educate the public about the various holiday traditions of different cultures. The presence of an unlit menorah did not benefit the Jewish faith; and in the context of city hall's regular use of the rotunda for historical, artistic and cultural displays, the exhibit did not signify excessive government entanglement. (*Okrand* v. *City of Los Angeles*, *supra*, 207 Cal.App.3d at pp. 574-577.)

As to that part of California's establishment clause which prohibits the state from exhibiting a "preference" for any one religion, we disagree with amicus curiae that Division Five's holding in *Okrand* requires us to find that were the ad posted, no preference would be exhibited. In holding that the menorah display showed no governmental preference for the Jewish faith, Division Five reasoned that city hall displayed other religious symbols such as Christmas trees; the menorah celebrates a historical event rather than a central Jewish religious principle; and the menorah was more a museum piece than a symbol of religious worship. (*Okrand* v. *City of Los Angeles*, *supra*, 207 Cal.App.3d at pp. 574-577.) Here, on the other hand, the display of the Ten Commandments on a school baseball field, with no other religious displays (as admitted by amicus curiae), is an explicit affirmation of the Judeo-Christian principles which are the cornerstone of the religions. We hold that were appellant's sign to be posted, it would violate the respondents' duty to show no preference to any one religion.

We conclude that by utilizing its discretion to reject appellant's sign, respondents acted responsibly and within the mandates of the establishment clause. Stated another way, if they had accepted the sign and posted it, respondents would have violated the establishment clause.

III. *Whether appellant's free exercise rights and free speech rights were abrogated*

A. *Appellant's free exercise rights were not abrogated*

██ Appellant argues that his right to freely exercise his religion was imposed upon by respondents' decision not to post his sign. We disagree.

"To demonstrate an infringement of his free exercise rights, an individual must show 'the coercive effect of the [state] enactment as it operates against

him in the practice of his religion.' " (*Brandon* v. *Board of Ed. of Guilderland Cent. Sch.*, *supra*, 635 F.2d at p. 976.) "A limitation on religious exercise is justified only if the state can demonstrate that its compelling interest in public health, welfare, morality, or other secular values justifies the restriction, and that less restrictive means to achieve the state's secular ends are not available." (*Ibid.*) In *Brandon*, the court found that a group of students who styled themselves "Students for Voluntary Prayer" were not denied their free exercise rights when the high school did not grant their request to conduct prayer meetings on campus in one of the high school rooms. That is, the students were not "coerced" out of their religion, but were free to conduct their religious meetings and prayer groups before or after school, on weekends, and in church or any other place. (*Ibid.*)

The court also found that even if the high school had infringed upon the students' free exercise rights, the high school's compelling state interest in upholding the establishment clause of the First Amendment outweighed the students' need for prayer groups. Allowing students to pray on campus, use campus facilities, and arguably infringe upon school time did not meet the three-prong test of *Lemon*. The court reasoned that while a policy permitting student groups to use the campus for various affairs is itself nonsecular, the promotion of students' leading a prayer group on school property, creates an impermissible stamp by the government of religious activity. Moreover, the third prong of excessive entanglement would be violated because, under New York law, the school has a duty to oversee student activities and would have to supervise and monitor the students during their prayer sessions.

Similarly here, appellant's freedom to worship as he chooses is not in any way inhibited. He is free to go to church, to pray—indeed, to hand out pamphlets in a public place or to go door-to-door. He is not free, however, to impose his religious viewpoints on children in the educational arena. Even were the rejection of his sign considered to be an imposition on his free exercise rights, the state has a compelling interest in acting in accordance with establishment clause strictures, as previously discussed.

Since we have concluded that the establishment clause of article I, section 4 of the California Constitution prohibits the display of appellant's ad, we need not address amicus curiae's argument that article XVI, section 5 and article IX, section 8 were not violated by the respondents' actions.[4]

---

[4]Article XVI, section 5 provides that "[n]either the legislature nor any county, city and county, township, school district, or other municipal corporation, shall ever . . . grant anything to or in aid of any religious sect, church, creed, or sectarian purpose."

Article IX, section 8 provides: "No public money shall ever be appropriated for the support of any sectarian or denominational school, or any school not under the exclusive control of the officers of the public schools; nor shall any sectarian or denominational doctrine be

### B. *Appellant's free speech rights were not abrogated*

■ Appellant also urges that his free speech rights have been violated. (Cal. Const., art. I, § 2.) We disagree.

■ In public forums, religious viewpoints can be freely aired. (*Brandon v. Board of Ed. of Guilderland Cent. Sch., supra,* 635 F.2d at p. 980.) High schools, however, are considered "non-public" forums, and establishment clause considerations limit the rights of students to air religious doctrines. (*Ibid.*) Religious activity typically involves expressive speech and, although protected by the First Amendment, as a matter of law, is subordinate to establishment clause concerns. (*Berger* v. *Rensselaer Cent. School Corp.* (7th Cir. 1993) 982 F.2d 1160, 1168 [school improperly allowed Gideons to distribute Bibles to fifth grade students during school hours and on school property].) That is, "where individuals seek to observe their religion in ways that unduly involve the government . . . their expressive rights may be circumscribed," and attempts to "wrench [the] case out of Establishment Clause jurisprudence must fail." (*Ibid.*)

■ As a matter of law, we conclude that appellant's free speech issues are subordinate to the establishment clause. In *Brandon,* the assertion by the student group "Students for Voluntary Prayer" of violation of their free speech rights to pray at school failed based on sensitive establishment clause considerations. Here, the primacy of the establishment clause is even more pronounced because appellant is not a student at the school.

Appellant's citation to *Christ's Bride Ministries, Inc.* v. *SEPTA* (3d Cir. 1998) 148 F.3d. 242 does not advance his cause. That case involved a public forum. There, the transportation authority accepted paid ads from Christ's Bride Ministries, Inc., which urged that women who had abortions suffered more and deadlier forms of breast cancer. These ads were posted in subway and railway stations. Upon receiving a letter from the Assistant Secretary of Health in the United States Department of Health and Human Services to the effect that the ads were misleading, unduly alarming, and did not accurately reflect the weight of the scientific literature, the ads were removed. Christ's Bride Ministries, Inc., brought suit. The court found that the transportation authority created a designated public forum in the form of advertisements in its bus stations and on its vehicles, and thus, its ability to limit speech was restricted by the First Amendment. (*Id.* at p. 247.) Moreover, the transportation authority had previously accepted ads with messages concerning abortions, birth control, HIV/AIDS, adoption, and safe sex. Under the strict scrutiny standard of review, the court held that the transportation authority

taught, or instruction thereon be permitted, directly or indirectly, in any of the common schools of this State."

did not act reasonably in failing to ask Christ's Bride's Ministries, Inc., to clarify the basis on which its claims were made. (*Id.* at p. 257.)

Here, on the other hand, Downey High School has not been designated a public forum. Rather, as a matter of law, it is a nonpublic forum. As such, respondents "retain full power to regulate access and content." (*Lopez* v. *Tulare Joint Union High School Dist. Board of Trustees* (1995) 34 Cal.App.4th 1302, 1328 [40 Cal.Rptr.2d 762] [school bulletin for the dissemination of educational or administrative information to students or faculty is nonpublic forum].) "Implicit in the concept of the nonpublic forum is the right to make distinctions in access on the basis of subject matter and speaker identity. These distinctions may be impermissible in a public forum but are inherent and inescapable in the process of limiting a nonpublic forum to activities compatible with the intended purpose of the property. The touchstone for evaluating these distinctions is whether they are reasonable in light of the purpose which the forum at issue serves." (*Perry Ed. Assn.* v. *Perry Local Educators' Assn.* (1983) 460 U.S. 37, 49 [103 S.Ct. 948, 957, 74 L.Ed.2d 794].) In light of respondents' interest in upholding the establishment clause, we conclude that its refusal to post the sign was reasonable.

Nor are we convinced that acceptance at a different school within the district of signs advertising ESP Psychics and Palm Readers or Freemasons transformed the forum into a limited public forum, with the concomitant reduced ability of the government to regulate expression. This case is not like *Christ's Bride Ministries, Inc.* v. *SEPTA, supra,* 148 F.3d 242, cited by appellant. There, the transportation authority was found by the court to have created a limited public forum by virtue of its written policy excluding a very narrow category of ads; based on its goal of generating revenues; its practice of permitting unlimited access to the forum; and its use of ads on the topics raised in the Christ's Bride Ministries, Inc., ads. (*Id.* at p. 252.) None of those fact situations exist in the instant case. Neither is this case like *Lamb's Chapel* v. *Center Moriches Union Free School Dist.* (1993) 508 U.S. 384 [113 S.Ct. 2141, 124 L.Ed.2d 352] where the court found that a limited public forum existed where the school had allowed its meeting rooms to be used after school for public events. The court found that a film series on parenting presented by a religious organization would not have been during school hours; would not have been sponsored by the school; and would involve the public, not only the church organization. In other words, allowing the film series would not violate the establishment clause. (*Id.* at p. 395 [113 S.Ct. at p. 2148]; see also *Westside Community Bd. of Ed.* v. *Mergens* (1990) 496 U.S. 226, 235 [110 S.Ct. 2356, 2364, 110 L.Ed.2d 191] ["A 'limited open forum' exists whenever a public secondary school 'grants an

offering to or opportunity for one or more noncurriculum related student groups to meet on school premises during noninstructional time.' "].) Finally, appellant's citation to *Tucker* v. *State of California Dept. of Educ.* (9th Cir. 1996) 97 F.3d 1204 does not avail him. There, although the court affirmed the personal expression of the religious beliefs of a government employee, the court noted that ". . . there is a legitimate state interest in preventing displays of religious objects that might suggest state endorsement of religion. The state has a legitimate interest, for example, in preventing the posting of Crosses or Stars of David in the main hallways, by the elevators, or in the lobbies, and in other locations throughout its buildings. Such a symbol could give the impression of impermissible government support for religion." (*Id.* at p. 1216.)

In any event, the signs which appellant claims were accepted are not similar to appellant's sign. Psychic readings businesses are not religious institutions but are commercial enterprises. The Freemasons, although a fraternal organization based on religious tenets, does not have a purely religious purpose; its purpose is charitable. Moreover, according to the record, the Freemasons' sign did not espouse religious beliefs but merely listed a number to call.

We conclude that appellant's free speech rights were not infringed upon.

IV. *Whether the trial court erred in ruling that the individual respondents were entitled to a grant of governmental immunity*

Under Government Code section 820.2, "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Appellant urges that the trial court erred in its finding that the individual respondents were entitled to a grant of immunity because "there is no evidence of a reasoned, conscious act of discretion actually taking place . . . ."

We disagree. The record shows that the individual respondents carefully considered the implications of posting appellant's ad on a public high school baseball field fence. The religious content of the ad and its lack of commercial advertising, and the possibility of litigation, were all taken into account when the individual respondents decided to reject the ad.

*Disposition*

The judgment is affirmed.

**ZEBROWSKI, J.,** Concurring.— ██ ██ ██ ██ ██ ██ ██ ██ ██ Respondents acted properly even if the posting of appellant's sign would not have violated the establishment clause. The baseball field was not a public forum for religious proselytizing. The school was not required to expend funds litigating the issue against whoever might choose to sue.

**MALLANO, J.,*** Concurring.—While I concur in the result, I do not agree with part II of Justice Nott's opinion holding that appellant's proposed paid advertisement containing the Ten Commandments contravenes the establishment clause of article I, section 4 of the California Constitution. The opinion relies on *Stone* v. *Graham* (1980) 449 U.S. 39 [101 S.Ct. 192, 66 L.Ed.2d 199] (*Stone*), in which the United States Supreme Court struck down a Kentucky statute requiring the posting of a copy of the Ten Commandments on the wall of each public classroom in the state.

*Stone* applied the three-part test of *Lemon* v. *Kurtzman* (1971) 403 U.S. 602 [91 S.Ct. 2105, 29 L.Ed.2d 745] (*Lemon*) for determining whether a challenged state statute is permissible under the establishment clause of the United States Constitution: " 'First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion . . . ; finally the statute must not foster "an excessive government entanglement with religion." ' " (*Stone* v. *Graham,* supra, 449 U.S. at p. 40 [101 S.Ct. at p. 193], citing *Lemon*). I believe that all three parts of the *Lemon* test have been met by appellant.

*Stone,* in discussing the first principle of *Lemon*— that the statute have a secular purpose—held that it did not, stating that "The pre-eminent purpose for posting the Ten Commandments on schoolroom walls is plainly religious in nature." (*Stone* v. *Graham, supra,* 449 U.S. at p. 41 [101 S.Ct. at p. 194].) It went on to explain: "This is not a case in which the Ten Commandments are integrated into the school curriculum, where the Bible may constitutionally be used in an appropriate study of history, civilization, ethics, comparative religion, or the like." (*Id.* at p. 42 [101 S.Ct. at p. 194].) Here, unlike the situation in *Stone*, the Ten Commandments were to appear in a paid advertisement along with 39 others, including ones purchased by ESP Psychics, a

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

palm reader, Freemasons and Coca-Cola. Allowing such advertisements was clearly for a secular purpose, to obtain advertising revenue, and, as well, avoided any entanglement with religion. *Widmar* v. *Vincent* (1981) 454 U.S. 263 [102 S.Ct. 269; 70 L.Ed.2d 440] (*Widmar*) is supportive as to both the first principle of *Lemon*, and the third—the statute must not foster an excessive government entanglement with religion. There the Supreme Court was contending with a policy of a state university, which made its facilities generally available for the activities of registered student groups, prohibiting use of the facilities to a registered student group desiring to use them for religious worship and religious discussion. In concluding that the first and third parts of the *Lemon* test would be satisfied if the policy of the university allowed, rather than prohibited, such a use, the Supreme Court stated: "[A]n open-forum policy, including nondiscrimination against religious speech, would have a secular purpose and would avoid entanglement with religion." (*Widmar, supra*, at pp. 271-272 [102 S.Ct. at p. 275], fn. omitted.)

Regarding the second part of the *Lemon* test—that the statute's principal or primary effect must be one that neither advances nor inhibits religion— Justice Nott's opinion states that "the posting of the Ten Commandments on the school baseball field would give the impression that the state has placed its imprimatur on a particular religious creed." (Lead opn., *ante*, at p. 277.) I disagree. In holding that the second principle of the *Lemon* test was met, the Supreme Court in *Widmar* stated that ". . . an open forum in a public university does not confer any imprimatur of state approval on religious sects or practices." (*Widmar, supra*, 454 U.S. at p. 274 [102 S.Ct. at p. 276].) Here, appellant's sign was to be one among 40, some of which, as has been noted, advertised ESP Psychics, a palm reader, Freemasonry and Coca-Cola. No reasonable person attending a high school baseball game observing appellant's proposed advertisement among the others would view its display as the school's endorsement of the Ten Commandments, any more than he or she would conclude that the school was giving its imprimatur to ESP Psychics, a palm reader, Freemasonry or Coca-Cola. Given the setting, it would be· viewed simply as a paid advertisement by appellant's family.[1] Accordingly, I conclude that the establishment clause would not be contravened here.

---

[1]See also *Rosenberger* v. *Rector and Visitors of Univ. of Va.* (1995) 515 U.S. 819 [115 S.Ct. 2510, 132 L.Ed.2d 700] (*Rosenberger*) involving the University of Virginia's withholding authorization for payments on behalf of petitioners for the sole reason that their student paper " 'primarily promotes or manifests a particular belie[f] in or about a deity or an ultimate reality.' " (*Id.* at pp. 822-823 [115 S.Ct. at p. 2513].) In holding that the making of such payments would not contravene the establishment clause, the Supreme Court states: "[T]here is no real likelihood that the [private] speech in question is being either endorsed or coerced by the State . . . ." (*Id.* at pp. 841-842 [115 S.Ct. at p. 2523].)

With respect to part III of Justice Nott's opinion regarding appellant's free exercise and free speech rights, whether the baseball field here is a nonpublic form or a limited public forum, I believe respondents were entitled to refuse religious advertisements. In *Rosenberger*, *supra*, 515 U.S. at page 829 [115 S.Ct. at page 2517], the Supreme Court stated, apropos of a limited public forum, "The State may not exclude speech where its distinction is not 'reasonable in light of the purpose served by the forum,' [citations]." I believe it was reasonable for respondents to decline religious advertisements in general at a high school baseball field. It also follows that respondents were entitled to extricate themselves from the dilemma in which they found themselves by discontinuing all advertising.

Appellant's petition for review by the Supreme Court was denied December 1, 1999. Kennard, J., and Brown, J., were of the opinion that the petition should be granted.