Filed 11/21/25 Guytan v. Swift Transportation Co. of Arizona CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ANTHONY GUYTAN, | B332490, B336036 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 19STCV10479) |
| v. | |
| SWIFT TRANSPORTATION CO. OF ARIZONA LLC et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment and postjudgment orders of the Superior Court of Los Angeles County. Gail Killefer, Judge. Affirmed.

Squire Patton Boggs, Carmen Cole, Chassica Soo and Eric W. Witt for Defendants and Appellants.

Abrolat Law, Nancy L. Abrolat; Esner Chang Boyer & Murphy and Stuart B. Esner for Plaintiff and Respondent.

_____

Swift Transportation Co. of Arizona LLC and Swift Transportation Services, LLC (collectively, Swift) appeal from a judgment in favor of Anthony Guytan. Guytan previously worked as a truck driver for Swift. Following his termination by Swift, he filed a lawsuit, which was eventually settled, as documented in a settlement agreement between Swift and Guytan that included a general release of claims.

Subsequently, Guytan was hired by another company as a driver. As part of the retention process, Guytan consented to the disclosure of information from his former employer, Swift. Swift caused the release of information that Guytan wrongfully refused to complete a drug test during his employment with Swift, a charge that Guytan contended was untrue. Following that disclosure, Guytan was fired by the new employer.

Guytan commenced this action against Swift, claiming that Swift unlawfully retaliated against him by releasing false information to his new employer. Swift moved for summary judgment, arguing that this action was barred by the earlier release. After the trial court denied the motion, the matter went to trial and Guytan secured a verdict in his favor.

Swift appeals from the judgment, arguing primarily that the trial court erred in denying summary judgment. We conclude that the release at issue did not bar Guytan from bringing this action, and accordingly affirm the judgment.

## BACKGROUND

Guytan filed this action against Swift in March 2019, alleging four causes of action: retaliation under the California Fair Employment and Housing Act (FEHA, Gov. Code, § 12900 et seq.), violation of Labor Code section 1050 et seq., intentional interference with prospective economic relations, and defamation. Guytan's FEHA claim was based on allegations that, in retaliation for filing the prior action against Swift, Swift falsely reported to Guytan's new employer

2

that he refused to take a legitimate drug test. Swift filed a motion for summary judgment or, in the alternative, summary adjudication in June 2021, which Guytan opposed.

Evidence presented in connection with the motion and opposition included the following: Guytan was employed by Swift as a driver for approximately 12 months, until his termination in March 2016. In compliance with relevant laws, Guytan was required to submit to drug testing. On March 11, 2016, Guytan was selected for testing. Swift contends that the selection was random and that it complied with applicable regulations in attempting to administer the test. Guytan disputes this characterization, asserting that the test was sprung on him after he had already clocked out of work as part of a pattern of ongoing retaliation, and that the Swift employee involved pushed and shoved him and said, "I want to see your dick in the cup" and "I want to watch the piss come out of the tip of your dick," leading to an altercation that caused Guytan to be escorted out of the building. Swift asserts that Guytan improperly refused to complete the test, leading to his immediate termination, while Guytan contends that he did not refuse but instead was not given the opportunity to test due to being assaulted and ejected from the building. Shortly after the incident, Swift reported to DriverFacts—a third-party driver verification provider for the transportation industry—that Guytan refused to test.

In February 2017, Guytan filed his first action against Swift, alleging eight causes of action, including FEHA and Labor Code violations. The complaint detailed numerous instances of alleged improper conduct by Swift against Guytan. The disputed drug test and any reporting of the test were not specifically referenced in the complaint.

The first action settled in October 2017, with the parties entering into a settlement agreement. As part of the settlement agreement, Guytan executed a general release of claims in favor of Swift on October 9, 2017. The release stated, in relevant part, that Guytan

3

released Swift from "any and all liabilities [and] claims," "whether known or unknown," that Guytan "now own[s] or hold[s], or ha[s] at any time heretofore owned or held, or may at any time own or hold by reason of any matter or thing arising from any cause whatsoever prior to the date of execution of this Agreement, including . . . any and all claims arising out of, connected with, or relating to" "Guytan's employment with [Swift] and/or termination of that employment," and "[a]ny act or omission by or on the part of [Swift] prior to the date Guytan" signed the agreement. The release additionally included language stating that Guytan expressly waived the provisions of Civil Code section 1542, which provides that a "general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release."

In November 2018, Guytan was hired by a new employer, U.S. 1 Logistics (US 1), as a truck driver. As part of the hiring process, and pursuant to federal regulations, Guytan authorized Swift to release his drug testing history. After receiving the authorization, Swift caused DriverFacts to release records to US 1, which included the report that Guytan refused to test on March 11, 2016. Guytan contended that his testing record should not have included the disputed refusal to test and that he did not realize the report would be included in the release. Guytan contacted Swift, both verbally and in writing, asking it to retract the report. Swift never did so, however, and Guytan's employment with U.S. 1 was terminated. Further, according to Guytan, due to the report, he was prohibited from working as a commercial truck driver and was prevented from obtaining employment with other companies. Guytan filed this action in March 2019, alleging that Swift's report was false and retaliatory and that it caused him to lose employment opportunities.

The motion for summary judgment or summary adjudication was heard by the trial court on January 28, 2022. The court granted summary adjudication in favor of Swift on three of Guytan's causes of

4

action (violation of Labor Code section 1050 et seq., intentional interference with prospective economic relations, and defamation) but denied summary adjudication of the FEHA claim and accordingly denied summary judgment.  The court found, in pertinent part, that the general release of claims did not apply to Guytan's claim that Swift made false statements to US 1 in connection with its employment of Guytan, which occurred after the execution of the settlement agreement.  The court additionally determined that Guytan raised triable issues of fact as to whether Swift was required to correct its disclosure of Guytan's testing records and whether any of Swift's actions were done in retaliation for the earlier lawsuit.

The matter then proceeded to a jury trial.  The jury made a series of special verdict findings, including that:  (1) Swift submitted an inaccurate report to DriverFacts and/or failed to correct the inaccurate report to DriverFacts that Guytan refused to take a drug test; (2) the inaccurate report was made in retaliation against Guytan; and (3) Swift's conduct harmed Guytan.  The jury awarded Guytan $350,000 for past economic loss and $250,000 for past noneconomic loss.

Swift appealed from the judgment.  In postjudgment proceedings, the trial court awarded Guytan attorney fees and denied a motion by Swift to tax costs. Swift also appealed from the postjudgment orders, and we ordered the appeals consolidated on June 26, 2024.

## DISCUSSION

### I.    Denial of Summary Judgment

Swift's primary argument is that the trial court should have granted summary judgment because Guytan released all claims at issue in this action, including the remaining FEHA claim, when he agreed to the general release in settling the prior action.

Summary judgment is appropriate when no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c).)  A defendant meets

5

its burden of demonstrating that a cause of action has no merit by showing that one or more elements of the cause of action cannot be established, or by demonstrating a complete defense to the cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).) A valid release can be raised as a complete defense. (*Rodriguez v. Oto* (2013) 212 Cal.App.4th 1020, 1026.)

We independently review a trial court's summary judgment ruling. (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1249.) Our review in this matter is necessarily constrained, however, in that the appeal comes after a jury trial. Although denial of a summary judgment motion may be challenged on appeal following a final judgment, "the appellant must nevertheless show the purported error constituted prejudicial, or reversible, error (i.e., caused a miscarriage of justice). [Citation.] In general, an order denying a motion for summary judgment or summary adjudication does not constitute prejudicial error if the *same question* was subsequently decided adversely to the moving party after a trial on the merits." (*Federal Deposit Ins. Corp. v. Dintino* (2008) 167 Cal.App.4th 333, 343.) A ruling on a preliminary matter, such as denial of summary judgment, " 'may lead to reversal only if we are persuaded "upon an examination of the entire cause" that there has been a miscarriage of justice. In other words, we are not to look to the particular ruling complained of in isolation, but rather must consider the full record in deciding whether a judgment should be set aside.' " (*Medina v. St. George Auto Sales, Inc.* (2024) 103 Cal.App.5th 1194, 1206 (*Medina*).)

### A.    Interpretation of a general release

In general, we review a contractual release under the same rules of construction that apply to contracts at large. (Civ. Code, § 1635; *Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 524 (*Hess*).) "The interpretation of a contract is a judicial function." (*Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1125.) Courts give effect to the parties' intent at the time of contracting. (Civ. Code,

6

§ 1636.)  "Although 'the intention of the parties is to be ascertained from the writing alone, if possible' ([Civ. Code], § 1639), '[a] contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates' (*id.*, § 1647).  'However broad may be the terms of a contract, it extends only to those things . . . which it appears that the parties intended to contract.'  (*Id.*, § 1648.)"  (*Hess, supra,* at p. 524.)

A release that extends to "*all* claims, known or unknown, suspected or unsuspected, arising from" acts occurring prior to execution of the settlement agreement, is a "broad release."  (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1166–1167 (*Winet*).)  Consistent with its terms, such a release extends to both unknown and unsuspected claims.  (*Id.* at p. 1167.)  "[A] general release can be completely enforceable and act as a complete bar to all claims (known or unknown at the time of the release) despite protestations by one of the parties that he did not intend to release certain types of claims."  (*San Diego Hospice v. County of San Diego* (1995) 31 Cal.App.4th 1048, 1053 (*San Diego Hospice*).)

**B.    The subject release, considered in the proper context**

The general release executed by Guytan in resolving the first action was broad.  Guytan released Swift from "any and all liabilities [and] claims," "whether known or unknown," that Guytan "now own[s] or hold[s], or ha[s] at any time heretofore owned or held, or may at any time own or hold by reason of any matter or thing arising from any cause whatsoever prior to the date of execution of this Agreement, including . . . any and all claims arising out of, connected with, or relating to" "Guytan's employment with [Swift] and/or termination of that employment," and "[a]ny act or omission by or on the part of [Swift] prior to the date Guytan" signed the agreement.  The release extended to claims that Guytan did "not know or suspect to exist in his . . . favor at the time of executing the release."  This release was

enforceable per its terms. (*Winet, supra,* 4 Cal.App.4th at pp. 1166–1167; *San Diego Hospice, supra,* 31 Cal.App.4th at p. 1053.)

Despite the broad nature of the release, the trial court denied summary adjudication of Guytan's FEHA claim, which was based on allegations that, in retaliation for filing the prior action against Swift, Swift caused the transmittal (through DriverFacts) of a false missed test report to US 1. The court found that the transmittal of allegedly false information to US 1 occurred after the settlement agreement, and so the release did not apply. The court accordingly denied summary judgment.

Swift now asserts that the trial court erred in denying summary judgment. Swift focuses on the language of the settlement agreement that the release applies to claims "arising out of, connected with, or relating to" "Guytan's employment with [Swift] and/or termination of that employment," and "[a]ny act or omission by or on the part of [Swift] prior to the date Guytan" signed the agreement. Swift contends that the basis of Guytan's FEHA claim can be traced back to Swift's original reporting of a missed drug test to DriverFacts in March 2016, prior to the settlement and release in October 2017. Swift thus argues that any claim by Guytan regarding the reporting of a missed drug test must necessarily arise from Guytan's employment with Swift and to acts that occurred prior to the date of the settlement agreement.

The problem with Swift's argument is that it miscomprehends the context of the claim at issue on summary judgment, as well as directly relevant findings later made by the jury. To obtain summary judgment, Swift needed to demonstrate that there were no triable issues of material fact. (Code Civ. Proc., § 437c, subd. (c).) Based on our independent review of the record, we conclude that Guytan did raise triable issues of material fact. Critically, these issues centered around conduct that postdated the settlement agreement. Furthermore, although the direct issue of whether Guytan released the subject FEHA claim by entering into the general release of claims was

8

not decided by the jury, facts directly impacting that inquiry were resolved by the jury adversely to Swift.

Guytan's complaint in the first action did not specifically reference the disputed March drug test or any reporting of the test, and the settlement agreement likewise did not mention the issue. Regardless, Swift correctly notes that the release applied to claims arising out of acts prior to the date of the agreement. Therefore, a claim based on the March 2016 drug test incident would be barred by the release.

Guytan's FEHA claim, however, can be broken down into elements that each postdate the settlement agreement. Guytan did not base his claim on the test itself, but rather the reporting of that test to US 1, which occurred—via DriverFacts, per Swift's authorization—in or around 2018, well after the signing of the settlement agreement. Swift argues that the report to US 1 stemmed from the initial report to DriverFacts in March 2016, but this argument ignores an issue raised by Guytan in opposing the motion for summary judgment—whether, prior to the report to US 1, Swift had an obligation to correct its report of a missed test, since Guytan presented evidence (by declaration) that he was never given the actual opportunity to test. Guytan thus raised triable issues of fact regarding the accuracy of the 2018 report to US 1 and whether Swift had an obligation to correct the report prior to authorizing its release to US 1. (See 49 C.F.R. § 391.23(g)(1) & (2) [providing that previous motor carrier employers must "[t]ake all precautions reasonably necessary to ensure the accuracy" of testing records].) Because Guytan raised triable issues of fact, Swift was not entitled to summary judgment. (Code Civ. Proc., § 437c, subd. (c).)

Indeed, when these issues were presented to the jury, the jury found in favor of Guytan. Swift does not argue that the jury's findings were improper or otherwise address the jury's ultimate findings, leaving Swift unable to demonstrate reversible error. (See *Medina, supra,* 103 Cal.App.5th at p. 1206 [in reviewing summary judgment

9

denial, "we are not to look to the particular ruling complained of in isolation, but rather must consider the full record in deciding whether a judgment should be set aside"].)

Simply put, despite the broad language of the release, there is no indication in the settlement agreement that Guytan intended to release Swift from liability for the future transmission of false information to a new employer. The agreement did not contain terms covering such matters, and even a broad release does not extend to issues beyond the terms of the agreement. (*Hess, supra,* 27 Cal.4th at p. 524.) Furthermore, had the agreement purported to absolve Swift of responsibility for the future transmittal of false, harmful information, such a provision presumably would run afoul of Civil Code section 1668, which provides: "All contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." Again, given that the jury found that Swift engaged in wrongful conduct by transmitting a false report to US 1, and Swift does not challenge the jury's findings, we are left to conclude that the release could not properly apply to the 2019 transmittal.

## C.    Propriety of the FEHA claim

We are also unpersuaded by Swift's separate argument that Guytan's FEHA cause of action was improper because it addressed termination of his employment by a new employer, US 1, rather than termination by Swift itself. Swift asserts that, as a former employer, it could not be held liable for activity that would otherwise constitute a FEHA violation, because there was no employer-employee relationship between Swift and Guytan when Guytan suffered harm.

Swift cites to no authority prohibiting a FEHA claim by a former employee; relevant authority runs to the contrary. Under the FEHA antiretaliation provision, an employer "may not discriminate against *any person* because the person has opposed any practices forbidden

10

under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." (Gov. Code, § 12940, subd. (h), italics added; see also *Sada v. Robert F. Kennedy Medical Center* (1997) 56 Cal.App.4th 138, 159–160 (*Sada*) [quoting text in rejecting argument that FEHA applies only to current employees].) The provisions of FEHA are to be "construed liberally for the accomplishment of" its purposes. (Gov. Code, § 12993, subd. (a).)

Case law pertaining to title VII of the Federal Civil Rights Act (42 U.S.C. § 2000e et seq.) is instructive in interpreting analogous issues under FEHA. (*Spaziano v. Lucky Stores* (1999) 69 Cal.App.4th 106, 112; *Walker v. Blue Cross of California* (1992) 4 Cal.App.4th 985, 997–998). In *Robinson v. Shell Oil Co.* (1997) 519 U.S. 337 [117 S.Ct. 843, 136 L.Ed.2d 208], the United States Supreme Court analyzed a claim in which a former employer allegedly retaliated against the plaintiff by providing a prospective employer with a negative job reference. In holding that title VII prohibits postemployment retaliation, the Supreme Court agreed with reasoning that "the word 'employees' includes former employees because to hold otherwise would effectively vitiate much of the protection afforded by [the antiretaliation provision]" and that "exclusion of former employees from the protection of [the antiretaliation provision] would undermine the effectiveness of Title VII by allowing the threat of post-employment retaliation to deter victims of discrimination from complaining to the [Equal Employment Opportunity Commission]." (*Id.* at pp. 345–346; see also *Sada, supra,* 56 Cal.App.4th 138, 161 [following *Robinson*].)

Similarly, in *Trulsson v. County of San Joaquin DA's Office* (E.D.Cal. 2014) 49 F.Supp.3d 685, the United States District Court for the Eastern District of California rejected an argument that "retaliation under the FEHA requires an 'employment nexus' in that there must be an ongoing employer-employee relationship." (*Id.* at p. 690; see also Chin et al., Cal. Practice Guide: Employment Litigation (The Rutter Group 2025) ¶ 7:190 ["the status of the aggrieved

11

individual, whether an existing employee, intern, volunteer, applicant or *former* employee, is irrelevant"].)  The *Trulsson* court reasoned that, if it were to find otherwise, "employers would have no disincentive against post-employment discrimination and current employees would be discouraged from bringing FEHA claims out of fear of post-employment retaliation."  (49 F.Supp.3d at p. 691.)

This analysis applies equally well here.  Guytan claimed that Swift retaliated against him by providing false information to his new employer because Guytan filed an earlier complaint against Swift alleging employment violations by Swift.  To hold that a FEHA claim is unavailable in these circumstances would risk discouraging individuals from engaging in FEHA-protected activity, out of fear that current or former employers might retaliate against them in future employment opportunities.

"Retaliation claims are inherently fact-specific, and the impact of an employer's action in a particular case must be evaluated in context." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1052.) Considering the particular facts of this case, we conclude that Guytan—a former employee found by the jury to have been retaliated against for engaging in FEHA-protected activity—could properly maintain a FEHA claim against the former employer, Swift, that engaged in the retaliatory conduct.

## II.    Exclusion of the Settlement Agreement at Trial

Following denial of the motion for summary judgment, Guytan filed a motion in limine to exclude from the jury evidence of the October 2017 settlement agreement between Swift and Guytan.  The trial court granted the motion, except for allowing disclosure to the jury that a settlement was previously reached between the parties.  Swift contends that the trial court erred in granting the motion in limine and that, in doing so, the court effectively prevented Swift from proceeding with a cross-complaint it filed against Guytan for breach of the settlement agreement and specific performance.

12

We discern no error. Swift argues that, if it was allowed to put on evidence relating to the terms of the settlement agreement, it could have demonstrated at trial that Guytan violated the settlement agreement by bringing this action. The terms of the agreement, however, were a matter for the court, not the jury to decide.

If the language of an agreement is unambiguous and no disputed extrinsic evidence bears upon its meaning, interpretation of the agreement is a legal issue for the court. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865; *Wolf v. Walt Disney Pictures & Television, supra*, 162 Cal.App.4th at p. 1126.) Swift does not contend that extrinsic evidence was necessary to explain the meaning of the settlement agreement. On the contrary, the parties agree that the terms of the contract are unambiguous.

The scope of the settlement agreement was thus properly decided by the trial court upon the motion for summary judgment, and the jury had no potential role in determining its meaning. Because the court found that the general release did not bar Guytan's FEHA claim (a conclusion that we affirm), Swift's breach of contract and specific performance claims necessarily failed. Swift thus fails to demonstrate error.

## III. Fees Award

Finally, Swift contends that the award of attorney fees and costs to Guytan should be reversed, predicated on its argument that the judgment in favor of Guytan is erroneous. Because we affirm the judgment, there is no basis to reverse the order awarding fees and costs.

13

**DISPOSITION**

The judgment and postjudgment orders are affirmed.  Guytan is entitled to his costs on appeal.

NOT TO BE PUBLISHED.


                                            LUI, P. J.

We concur:


RICHARDSON, J.


SIGGINS, J.*

_____

**\*** Retired Presiding Justice of the Court of Appeal, First Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.